THE PEOPLE OF THE STATE OF NEW YORK ex rel. NELLIE A. CRONIN, Respondent, *v.* JAMES W. COFFEY, Comptroller of the City of Troy, Appellant.

*Public schools in the city of Troy — salary of teachers — the board of school commissioners may employ its appropriation as it deems best — Laws of 1873, chap. 126, sec. 14; Laws of 1887, chap. 6, sec. 4.*

It is provided by the Laws of 1887 (chap. 6, § 4) that it shall not be lawful for any officer, board or department in the city of Troy to make a contract for work or supplies, which by its terms involves an expenditure in excess of the amount which has been estimated and allowed said board in the annual estimates, nor shall its board of school commissioners enter into any contract to hire school teachers which by its terms is not to be performed within the fiscal year.

A board of school commissioners employed teachers for one year at a salary, larger than that contemplated by the city estimates, by a resolution which read: "Provided there be sufficient money properly set apart to pay them for that period; and if there be not sufficient money for that purpose for such portion of that period, as the money so set apart shall be sufficient."

Upon an application made by a teacher for a peremptory *mandamus* to compel payment of her salary:

*Held,* that the *mandamus* should issue.

That the statute of 1887 had left it discretionary with the board how it should employ its funds; and that even if the payment of a higher salary might shorten the teacher's time of service and result in an earlier closing of the school, this was a matter which the city comptroller could not regulate.

That it was error, therefore, for him to refuse to countersign the order for such a salary.

APPEAL by the defendant James W. Coffey, comptroller of the city of Troy, from an order, entered in the office of the clerk of the county of Rensselaer on the 3d day of July, 1891, directing that a writ of peremptory *mandamus* issue directed to him and

requiring him to countersign a draft or order upon the chamberlain of said city for the payment to the relator of her salary as a school teacher of said city for one month.

*William J. Roche*, for the appellant.

*Warren, Patterson & Gambell*, for the respondent.

LEARNED, P. J.:

This is an appeal from an order directing the issue of a peremptory *mandamus*.

At the regular meeting of the school commissioners of Troy, held February 27, 1891, a resolution was passed that certain teachers, naming them, be elected from March 1, 1891, to March 1, 1892, " provided there be sufficient money properly set apart to pay them for that period, and if there be not sufficient money for that purpose, for such portion of that period as the money so set apart shall be sufficient." Under that resolution the relator was appointed third assistant in the intermediate department of School No. 10. Her salary was, at the same meeting, made sixty dollars per month. She served as such assistant the month of April, and duly presented her bill for payment. This was properly audited by the board, and a draft on the chamberlain for the amount was duly issued. It is necessary that the comptroller should countersign the warrant, and this he refuses to do.

The ground of his refusal is as follows: On the 5th of February, 1891, the common council, having previously received the comptroller's estimate of the amount of money necessary to carry on the city government for the ensuing year, made the regular appropriations. Among these the common council appropriated for the board of school commissioners, among other specific items, "for salaries of superintendent, clerk, messenger and teachers, and allowance to orphan asylums, in addition to income from non-resident pupils, $105,350."

In making up this estimate, thus adopted by the common council, the comptroller had estimated the various salaries at the amount paid the previous year, as for a full school year. The board of school commissioners, at the aforesaid meeting, increased many of

these salaries, among them that of the office held by the relator, which the board increased from fifty dollars to sixty dollars. If such increased salaries should be paid for the full school year, they would be in excess of the amount appropriated as above stated. The board, it is claimed, is prohibited from incurring debts beyond that amount. Hence it is said that it would be necessary to close the schools when the appropriation should be exhausted, and that that would be before the end of the ordinary school terms. The total increase thus made by the board is about eleven thousand dollars.

There are two questions of importance in this case which might be considered. The first is whether the Board of school commissioners is limited in making its contracts so that it may not exceed the amount previously appropriated by the common council.

The second is, if the board does not exceed that amount, whether it may make contracts for teachers, etc., at its discretion, etc., provided they are to be performed within the current fiscal year.

We will consider the second question, because that only is necessarily presented here. The board of school commissioners has not as yet exceeded the amount appropriated by the common council. Nor does it necessarily follow from its action in respect to the relator that it will do so. Its action contained a proviso that there should be sufficient money set apart to pay the teachers for the whole year, and if not, then the appointment was only for such portion of the time as the money was sufficient for.

It is not disputed that this board has the authority to contract with teachers and employ them and to pay their wages. (Laws of 1873, chap. 126, § 14.) A restriction is, perhaps, placed on the board by the Laws of 1887 (chap. 6, § 4). That restriction, assuming that it applies, forbids the board from exceeding the amount "estimated and allowed" by the board of estimate. But the resolution of the board under consideration seems to have regard to that resolution and to avoid violating it.

Within that restriction it seems to us that the statute has left the matter discretionary with the board. If the board decides that it is best to use the money which is within its control by employing teachers at higher wages and for a shorter term than had been in the previous year, it cannot be that the comptroller may reverse

their action. His position is, that, inasmuch as the estimate made by him, and adopted by the common council, was made on the basis of so many teachers for so many weeks at such salaries, therefore, the board of school commissioners could not contract for fewer weeks and for higher prices. This would give the comptroller power to regulate the action of the board.

The comptroller argues forcibly that if this board can lawfully act as they have done, then the fire commissioners might so increase the salaries of their employees, that the money set apart for the fire department would be exhausted in ten months and the city left defenseless against fire for the remaining two of the year. There are, undoubtedly, some difficulties which may arise under the plan of government of the city of Troy. When money has been appropriated in a general way for salaries, or for any other class of expenses, it seems necessary that some officer or some board should make the specific application. That duty is not intrusted to the comptroller. In this branch of the government it is intrusted to this board. Until they attempt to draw drafts beyond the amount appropriated, or to apply the money to unlawful purposes, it seems necessary that the board should use its discretion. We cannot remedy any suggested difficulties by depriving the board of school commissioners of the power given them to make contracts for teachers. This power necessarily means that they may agree upon the salaries. And when the teacher has done the work under such agreement he is entitled to his pay. That is the case before us. And, unless we deny the power of the board, the relator has earned the salary agreed upon.

The position taken by the comptroller, if sustained, would authorize him to refuse to countersign any draft, on the ground that, if other drafts to a large enough amount should be issued, the money appropriated would be exhausted. For that is really his position now. He says: If the board shall continue to issue drafts of the same amount with this and other similar drafts for the full fiscal year, there will be no money to pay them all; and, therefore, he refuses to countersign this.

As there is money in the city treasury appropriated to the payment of the salaries of teachers, we think it is not for the comp-

troller to say how the board of school commissioners shall make contracts payable therefrom.

The order is affirmed, with costs.

LANDON and MAYHAM, JJ., concurred.

Order affirmed, with costs.