STATE EX REL. BOARD OF EDUCATION OF THE CITY OF BRIDGEPORT *v.* ADOLPH D'AULISA, COMPTROLLER OF THE CITY OF BRIDGEPORT

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued January 8—decided February 26—reargued
April 10—amended opinion filed April 16, 1947

*David R. Lessler,* for the appellant (plaintiff).

*Harry Schwartz,* with whom, on the brief, was *John V. Donnelly,* for the appellee (defendant).

BROWN, J.   In this action for a mandamus to compel the defendant as comptroller of the city of

Bridgeport to certify for payment certain teachers' and superintendents' current salary payroll items, for the period from April 1 to April 12, 1946, of the fiscal year ending March 31, 1947, the board of education of the city of Bridgeport, hereinafter referred to as the plaintiff, is the relator. The court rendered judgment for the defendant and the plaintiff has appealed. The material facts established by the finding, which is not subject to correction, may be thus summarized: The plaintiff is the agency charged by statute and charter with duties incident to providing public educational facilities in the city. The city's board of apportionment and taxation is the agency responsible for making annual appropriations to meet the requirements of all departments of the city, including that of the plaintiff, and for laying taxes to raise funds to cover these appropriations. In December, 1945, the plaintiff submitted to the defendant a detailed estimate of its requirements for the fiscal year commencing April 1, 1946. Acting upon these estimates, the defendant in turn submitted his recommended appropriations to the board of apportionment and taxation. On the basis of the budget so submitted by the plaintiff and the defendant's recommendations thereon, the board made specific appropriations to the plaintiff covering various types of expenditures including items for equipment, supplies, repairs, salaries for teachers and wages and salaries of other employees. These appropriations totaled $2,378,144 for the fiscal year. The procedure was customary and in accordance with the provisions in charter and statute.

Early in April, 1946, in anticipation of the first semimonthly payments under the appropriations so made, the plaintiff prepared payroll sheets setting

forth certain salary payments which it desired to make for the first payment period to teachers and certain other employees and transmitted them to the defendant for action pursuant to § 155 of the city charter, revision of 1939 (18 Spec. Laws 664, 665, as amended by 20 Spec. Laws 148), which provides that "Said board [the plaintiff] shall audit and approve, semi-monthly, all bills for the ordinary current expenses of its department, and report the same to the comptroller who shall thereupon certify whether or not the appropriation is sufficient for the payment thereof, and if sufficient he shall so certify to the city treasurer, and thereupon the same shall become due and payable." As a result of his calculations based on the payrolls submitted and upon his experience, the defendant concluded that at the rate indicated by these proposed salary payments the plaintiff's total salary requirements would result in a reasonably definite prospective deficit of $232,369 in the amounts appropriated for the salaries in question for the fiscal year. In reaching this decision the defendant did not consider any item of the plaintiff's appropriations except the ones which applied to the salaries in question as identified and allocated on the payroll sheets. Neither did he take into account the possibility of the plaintiff's transferring any unexpended balances from other of its appropriations to its salary account, nor of its taking future action to render available for its teaching employees $187,922 from a "Reserve for Employees' Bonus" which had been established by the city entirely apart from the plaintiff's appropriations. In consequence of his conclusion that the amounts presented, when calculated in terms of the entire fiscal year, would substantially exceed the appropriations made, the defendant

decided that he could not certify that sufficient appropriated funds were available, and he notified the plaintiff accordingly.

The court concluded: (1) The defendant, in declining to certify the payrolls, was performing a function calling for the exercise of his judgment and discretion. (2) He did not refuse to act in the matter submitted to him or to exercise his judgment and discretion. (3) His action was taken in good faith in the exercise of his interpretation of his legal duty. (4) The plaintiff failed to establish that it had a clear right to the remedy of mandamus. (5) It did not establish that it had no other sufficient remedy at law. Briefly summarized, the plaintiff's claims are that it constitutes a separate state agency which has exclusive control of the salaries to be paid its personnel and of the expenditure of all funds in the budget appropriated by the city to its use, and that the defendant's power, under § 155 of the charter, with relation to the disbursement of appropriations made to it is restricted solely to the ministerial function of certifying whether or not sufficient appropriated money is at hand to pay the particular bill presented, with no right in him to exercise any discretion or judgment.

State statutes as well as charter provisions of the city must be considered in determining the defendant's right and duty as to the certification of the payroll items in question. That under our law the furnishing of education for the general public is a state function and duty is manifest from the extensive legislation relating to it. See chapters 44 to 57 of the General Statutes as amended. Under the statutes, provision is made for the education of the inhabitants of each town through its town board of

education. Accordingly, as we have stated, "A town board of education is an agency of the state in charge of education in the town; to that end it is granted broad powers by the legislature; and it is beyond control by the town or any of its officers in the exercise of those powers or in the incurring of expense, to be paid by the town, necessitated thereby, except as limitations are found in statutory provisions. *Groton & Stonington Traction Co.* v. *Groton,* 115 Conn. 151, 155, 160 Atl. 902; General Statutes, Cum. Sup. 1935, § 297c." *Board of Education of Stamford* v. *Board of Finance,* 127 Conn. 345, 349, 16 A.2d 601. In so far as the present case is concerned, the expression "statutory provisions" as so used includes the legislature's enactments contained in the charter of the city of Bridgeport as well as those in the General Statutes. See *State ex rel. Wallen* v. *Hatch,* 82 Conn. 122, 124, 72 A. 575. Under the charter, the city succeeded to all burdens, expenses, duties, rights, powers and privileges of the town of Bridgeport specified by law relative to the support and maintenance of schools. Charter & Ordinances of Bridgeport, Rev. 1939, § 4; 15 Spec. Laws 495. Therefore the question arises whether any limitations upon the plaintiff's power to disburse the appropriations which have been made for its budget exist either by statute or under the provisions of the charter within the principle quoted above.

Section 275c of the 1935 Cumulative Supplement provides that the board of education "shall prepare an itemized estimate of the cost of maintenance of public schools for the ensuing year and shall submit such estimate . . . to the authority [of the city] making appropriations therein, not later than two months preceding the annual meeting at which ap-

propriations are to be made. The money appropriated by any city . . . for the maintenance of public schools shall be expended by and in the discretion of the board of education." The board of apportionment and taxation is the Bridgeport authority making appropriations. After specifying that the board of education may transfer unexpended balances "to any other item of such itemized estimate," the statute continues: "Expenditures by the board of education . . . shall not exceed the appropriation made by the city . . . with such money as may be received from other sources for school purposes." Confirmation of the plaintiff's control over teachers' compensation is to be found in §§ 155 (18 Spec. Laws 664, 665, as amended by 20 Spec. Laws 148), 206 (22 Spec. Laws 262) and 209 (22 Spec. Laws 263) of the charter.

The charter further contains complete and explicit provisions for budgeting the city's finances for the fiscal year; for raising the revenue which is so determined to be essential to meet its expenses, including the payments to the plaintiff pursuant to the specific appropriations made for its budget; and for the control of all expenditures by the city under its budget during the year. See §§ 69 (20 Spec. Laws 248), 95 (17 Spec. Laws 847, as amended by 20 Spec. Laws 247, 248) and 83 (17 Spec. Laws 848, as amended by 20 Spec. Laws 247–9). The dominant purpose with regard to the financing and payment of operating expenses which clearly appears from the charter is well summarized by certain provisions in § 83. One is: "The board of apportionment and taxation shall have no power to make appropriations in excess of the revenues of the city for any year, and in no case shall the expenses of the city exceed its revenue for

any year, except in cases and for purposes for which the bonds are so issued." Another specifies that no money other than provided by the regular annual appropriations "shall be expended for any purpose, unless a special appropriation therefor" is first made either by the court of common council out of unappropriated revenues or by the board of apportionment and taxation for which it shall provide by a special tax laid to meet the same. And see *Toomey* v. *Bridgeport,* 79 Conn. 229, 232, 234, 64 A. 215. By these statutory and charter provisions the legislature has given clear expression of its intention that (1) the plaintiff shall have full discretion as to how and when it shall expend for the maintenance of the city's public schools during the fiscal year the money which the city has duly appropriated for this purpose; (2) when such appropriation has been exhausted, the plaintiff shall receive no additional money from the city for such purpose unless and until further appropriation has been made therefor by the board of apportionment and taxation as provided in the charter; (3) the defendant shall certify that the appropriation is insufficient for the payment of any bill presented by the plaintiff if the amount of such bill exceeds the unexpended balance of the appropriations which the plaintiff has been empowered to expend for that fiscal year. Accordingly, as indicated by these enactments, the function of the defendant as comptroller in the discharge of his duty under the budgetary system established by statute and charter is to see to it that no money is paid out for school purposes in excess of the total which has been appropriated for the plaintiff's use for the fiscal year in question. By the express terms of the relevant pro-

visions of the law, this is the full extent of his power and duty.

The defendant, however, very earnestly contends that in view of the control of expenditures contemplated by the charter provisions, notwithstanding the fact that the actual unexpended balance of the specific appropriation in each instance, as well as the over-all balance of the total of appropriations for school purposes, far exceeds these bills, § 155 should be construed to entitle the comptroller upon the situation presented in this case to refuse to certify that the specific appropriations for the salary payments in question are sufficient to pay the bills presented, because the total of these plus similar recurring salary payments for the balance of the fiscal year at the same rate would exceed such appropriations respectively made for their payment. While the defendant recognizes the limited extent of the function of the comptroller specified by the enactments above referred to, he urges that the further power for which he contends should be held to arise by implication, and in this connection has cited many cases where a liberal construction was favored to give effect to the legislature's intent in contradistinction to "the precise letter of the language of the statute." E.g. *Bridgeman* v. *Derby,* 104 Conn. 1, 8, 132 A. 25. In the instant case, however, because of the language which the legislature has used, the principle laid down in those cases is not applicable. Per contra, what we stated in *McManus* v. *Jarvis,* 128 Conn. 707, 711, 22 A.2d 857, holds true here: ". . . as the wording of the statute is plain we are not at liberty to speculate upon any supposed intention not expressed in an appropriate manner or to restrict the ordinary import of words used in order to effectuate such sup-

posed intent but 'which the statute in its native form does not express.' " But this aside, there are compelling practical reasons for rejecting the defendant's interpretation. If § 155 were to be construed to give him a discretion to be based upon what he expects will be a future result, he would be endowed with practically an absolute power to determine whether or not a large part of the bills incurred by the plaintiff should be paid when presented.

The conclusion is inescapable that in presenting the semimonthly salary payroll items for the salaries in question to be paid by the city the plaintiff transgressed no statutory limitation, and therefore under the principle which we have quoted from *Board of Education of Stamford* v. *Board of Finance,* supra, the defendant as the city's comptroller had no right or power to do other than certify that sufficient funds, appropriated for that fiscal year, were available for payment of these bills. See *People ex rel. Cronin* v. *Coffey,* 62 Hun 86, 16 N.Y.S. 501, 502. The comptroller has certain ministerial duties; see *State* v. *Staub,* 61 Conn. 553, 569, 23 A. 924; but there is nothing in the charter which gives him discretion. In fact, his duties with reference to the board of education are more restricted than in the case of other departments. Charter of Bridgeport, § 69; 20 Spec. Laws 248. "A ministerial act is one which a person performs in a given state of facts . . . in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of the act being done." *American Casualty Ins. Co.* v. *Fyler,* 60 Conn. 448, 460, 22 A. 494. Such was the act which the plaintiff by this proceeding sought to compel the defendant to perform. It sufficiently appears that there is no other sufficient

remedy. See *State ex rel. Rowell* v. *Boyle,* 115 Conn. 406, 412, 162 A. 26. The plaintiff was therefore entitled to judgment. *State ex rel. Foote* v. *Bartholomew,* 103 Conn. 607, 617, 132 A. 30; *State ex rel. Heimov* v. *Thomson,* 131 Conn. 8, 12, 37 A. 2d 689.

The trial court was in error in not issuing the writ of peremptory mandamus. Whether such a writ should be issued now presents a different question, for in mandamus the factual situation existing at the time the writ is to issue governs. *State ex rel. Shelton* v. *Edwards,* 109 Conn. 249, 254, 146 A. 382; *State ex rel. Bulkeley* v. *Williams,* 68 Conn. 131, 155, 35 A. 24, 421. This court cannot find facts, but it was stated in argument and not denied that the fears expressed by the defendant at the time of the original application for the writ have been realized and that the board of education, even without the increases reflected in the payroll in litigation, has overdrawn the 1946–1947 appropriation which expired March 31, 1947. What, if any, relief can be afforded the plaintiff at this time must be determined by the Superior Court.

There is error, the judgment is set aside and the case is remanded to the Superior Court for proceedings not inconsistent with this opinion.

In this opinion the other judges concurred.