WATERBURY TEACHERS ASSOCIATION *v.* ARNOLD FURLONG ET AL.

WATERBURY TEACHERS ASSOCIATION *v.* BOARD OF EDUCATION OF THE CITY OF WATERBURY

WATERBURY BOARD OF EDUCATION ET AL. *v.* WATERBURY TEACHERS ASSOCIATION

HOUSE, C. J., COTTER, THIM, SHAPIRO and LOISELLE, Js.

Argued October 14, 1971—decided February 8, 1972

*Kevin T. Nixon,* with whom, on the brief, were *Donald A. House* and *Michael C. Hagstrom,* for the appellant (plaintiff) in the first and second cases and for the appellant (defendant) in the third case.

*John F. Phelan,* assistant corporation counsel, for the appellees (defendants) in the first and second cases and for the appellees (plaintiffs) in the third case.

House, C. J. Although the parties in this trilogy of cases have not combined them for a single appeal pursuant to the elective provisions of § 606 of the Practice Book, they were argued before us as companion cases. Since a decision on the appeal in each case is largely dependent on the resolution of a common basic issue, it is appropriate for us to discuss the merits of all three appeals in one opinion with appropriate separate discussion of the secondary legal issues peculiar to each fact pattern. They are the most recent of a long line of cases which deal with some aspect of the continuing problem of the respective powers of a board of education vis-a-vis the municipal board of finance. In this instance, the disputes arose in Waterbury and the problems concern not only the provisions of the Waterbury charter which provide for powers vested in the board of finance to approve the salaries of teachers as fixed by the board of education but also the effect of the provisions of Public Act No. 298, adopted by the special session of February, 1965, of the General Assembly. This act was entitled "An Act Concerning the Right of Teachers' Representatives to Negotiate with Boards of Education." At the start, it is important to bear in mind that in these cases we are concerned only with Public Act No. 298 and not the provisions of Public Act No. 811, adopted in 1969 and entitled "An Act Concerning the Right of Certified Professional Employees to Negotiate with Boards of Education." The latter public act is now found in §§ 10-153a—10-153h of the General Statutes and is substantially different from its predecessor Public Act No. 298. Unlike the 1965 act, with which the present cases are concerned, the 1969 act contains a provision (now § 10-153d) that any written contract concerning salaries and other conditions of

employment negotiated between a board of education and a teachers' bargaining agent shall be filed with the town clerk and "[t]he terms of such contract shall be binding on the legislative body of the town . . . unless such body rejects such contract at a regular or special meeting called for such purpose within thirty days of the signing of the contract." It further provides that "[t]he body charged with making annual appropriations in any school district shall appropriate to the board of education whatever funds are required to implement the terms of any contract not rejected pursuant to this section." Section 10-153g now contains a specific provision that "[n]otwithstanding the provisions of any special act, municipal charter or local ordinance, the provisions of §§ 10-153a to 10-153f shall apply to negotiations concerning salaries and conditions of employment conducted by boards of education and certified personnel." The enactment of the 1969 statute has materially changed the law of the state as it would now apply to the issues raised in the present appeals, but, since the 1969 action of the General Assembly had no retroactive effect, the merits of these appeals must be determined by the law as it existed at the time the disputes herein discussed arose.

At the heart of these disputes between the parties are four legislative enactments. They are §§ 10-220 and 10-222 of the General Statutes, § 903 (a) of the charter of the city of Waterbury (Spec. Acts 1931, No. 499, § 269), and Public Act No. 298 of 1965. In 1965, as well as at the present time, § 10-220 of the General Statutes provided, in part, that "[b]oards of education shall maintain in their several towns good public elementary and secondary schools and such other educational activities as in their judgment will best serve the interests of the town." Sec-

tion 10-222, as now, provided, in part, that each board of education should prepare an itemized estimate of the cost of maintenance of public schools for the ensuing year and submit that estimate to the local board of finance or other authority making appropriations in the municipality. It then provided that "[t]he money appropriated by any city, town or school district for the maintenance of public schools shall be expended by and in the discretion of the board of education. Any such board may transfer any unexpended or uncontracted-for portion of any appropriation for school purposes to any other item of such itemized estimate. Expenditures by the board of education in each city, town or school district, as the case may be, shall not exceed the appropriation made by the city, town or school district, with such money as may be received from other sources for school purposes." In 1965, there was also in existence a provision of the charter of the city of Waterbury, § 903 (a), which provided: "The board of education shall appoint a superintendent of schools and shall decide the number of principals, assistants and teachers to be employed. It shall fix their salaries, subject to the approval of the board of finance, and prescribe their duties in each case unless otherwise provided."

To the problem of divided responsibilities in the fixing of teachers' salaries under these general statutes and the special act provision, the legislature in 1965 added the provisions of Public Act No. 298 § 3, which granted to teachers' representatives the right to negotiate with boards of education "with respect to salaries and other conditions of employment" leading to "the execution of a written contract incorporating any agreement reached if requested by either party."

The present controversies have arisen over the proper interpretation of these legislative enactments as they affected the respective powers of the board of education, the board of finance and the board of aldermen of Waterbury in connection with the compensation to be paid to teachers employed by that city. Before discussing the details of each of the separate appeals, some general observations are pertinent.

The Waterbury Teachers Association, hereinafter referred to as the association, asserts that its employment contracts with the board of education of the city of Waterbury, hereinafter referred to as the board, were valid and binding on the city of Waterbury, hereinafter referred to as the city, notwithstanding the restrictions imposed by the city's charter. It predicates the claim on three grounds.

In the first instance, the association contends that the board is not subject to municipal control except as limitations are found in statutory provisions and that no valid limitation of the powers of the board exists in any statutory provisions. It asserts that education is a function of the state and the board in operating and staffing the schools is serving as an arm of the state and in those functions is beyond the control of municipal authority. In its view, the numerous legislative enactments in the past as interpreted by this court have given broad discretion and authority to boards of education in the management of local school systems and, in the present cases, the contracts between the board and the association were binding on the board and the city without further approval or action by the board of finance.

With this contention, we cannot agree. This court on numerous instances in the past has held that the duty of providing education rests with the state and

that local boards of education have been delegated this authority. See *Board of Education* v. *Ellington,* 151 Conn. 1, 193 A.2d 466; *Fowler* v. *Enfield,* 138 Conn. 521, 86 A.2d 662; *State ex rel. Board of Education* v. *D'Aulisa,* 133 Conn. 414, 52 A.2d 636; *Board of Education of Stamford* v. *Board of Finance,* 127 Conn. 345, 16 A.2d 601; *Groton & Stonington Traction Co.* v. *Groton,* 115 Conn. 151, 160 A. 902; *Lucier* v. *Norfolk,* 99 Conn. 686, 122 A. 711; *State ex rel. Huntington* v. *School Committee,* 82 Conn. 563, 74 A. 882; *State ex rel. Walsh* v. *Hine,* 59 Conn. 50, 21 A. 1024. The association interprets some of the broad language in these many decisions to hold that a board of education is virtually an autonomous organ beyond the control of the local municipality.

The general extent of local control was discussed in the recent case of *Board of Education* v. *Ellington, supra.* As we there noted (p. 6), quoting from *Fowler* v. *Enfield, supra*: "A town board of education is an agency of the state in charge of education in the town, and broad powers are granted it by the legislature to that end. In the exercise of those powers or in the incurring of expense necessitated thereby to be paid by the town, the board of education is beyond control by the town or any of its officers except as limitations are found in statutory provisions." But to this quotation was added the following statement which has particular significance in our consideration of the present cases: "In the absence of special charter provisions, the power of any municipality to control the budget of its board of education is derived from General Statutes § 10-222."

Following the above observations, the court, in the *Ellington* case, supra, noted (p. 8) that the board

of finance "has a broad but not unlimited power to determine the amount that the municipality will appropriate, among other things, for educational purposes" and quoted with approval from *Board of Education of Stamford* v. *Board of Finance,* supra, which we referred to in the *Fowler* case, supra, 531, as stating "[t]he controlling rule of law": "Where a town board of education includes in the estimates it submits to a board of finance expenditures for a purpose which is not within statutory provisions imposing a duty upon it nor within one which vests it with a discretion to be independently exercised, the board of finance may, if in its judgment, considering not only the educational purpose to be served but also the financial condition of the town, it finds that the expenditure is not justified, decline to recommend an appropriation for it; . . . where, however, the estimate is for an expenditure for a purpose which the statutes make it the duty of the board of education to effectuate or they vest in the board of education a discretion to be independently exercised as to the carrying out of some purpose, the town board of finance has not the power to refuse to include any appropriation for it in the budget it submits and can reduce the estimate submitted by the board of education only when that estimate exceeds the amount reasonably necessary for the accomplishment of the purpose, taking into consideration along with the educational needs of the town its financial condition and the other expenditures it must make. The board of finance in such a case must exercise its sound judgment in determining whether or to what extent the estimates of the board of education are larger than the sums reasonably necessary and if it properly exercises its discretion and the budget is approved by

the town the board of education has no power to exceed the appropriations made." Thus, even in the absence of special restrictive charter provisions, only when a board of education is acting directly and in a reasonable manner to fulfill a statutory duty can it accurately be said that it functions outside the established municipal governing structure. To hold otherwise would be tantamount to the giving of a blank check to boards of education to spend the money of the municipality without regard to economy, efficiency or other local needs. Absent a statutory or special act prohibition, a board of education may contract with third parties for educational goods or services. To the extent that those goods and services are reasonable expenditures reasonably necessary to fulfill a statutory educational requirement, the municipality is bound by the terms of that contract regardless of whether there has been specific approval or appropriation by the municipal legislative or financial body. This has been the tenor of our holding since *Lucier* v. *Norfolk,* supra, 695, where we said: "As we have seen, the legal agency for making contracts of the kind under consideration is the school committee, and its acts, legally effected, bind the town, where payments are to be made by it. In order to bind the towns, therefore, to any payment or obligation, the committee must act within its statutory powers." Where the goods or services contracted for are something other than those which are essential to the fulfillment of the statutory duty of the board of education, the municipality may not be bound by the terms of the contract, absent approval by the local governing authority.

The present controversies concern teachers' salaries and related employment benefits. It is clear

that teachers are an essential part of any educational system and a municipal legislative or finance body may not impede implementation of the statutory obligation of the board of education to "maintain . . . good public elementary and secondary schools" as required by General Statutes § 10-220 by refusing to appropriate or approve an appropriation for a minimum level of compensation for teachers necessary to attract and retain a reasonable number of qualified professional personnel. It was just such a conflict in the relative powers of boards of education and boards of finance which led to the pertinent observations of Chief Justice Maltbie in *Board of Education of Stamford* v. *Board of Finance,* 127 Conn. 345, 352, 16 A.2d 601: "[I]t is probably true that in many instances a board of finance does not have as sound an understanding of the educational needs of a town as does its board of education and that therefore a decision by the former to reduce an estimate submitted by the latter may not in fact conduce to the best educational interests of the people of the town; but, on the other hand, it is more than possible that a board of education, less familiar with the finances of the town or perhaps with financial matters in general, if left without a check, might incur expenditures which are not reasonably necessary to serve those interests and the expenses of which the town could ill afford to meet. One purpose of the legislature in establishing town boards of finance is, as we pointed out in . . . [*Groton & Stonington Traction Co.* v. *Groton,* 115 Conn. 151, 158, 160 A. 902], to afford a check against the incurring of such expenses on the part of the town. It is also true that where a board of finance reduces an estimate of a board of education so that the sum

appropriated is less than is reasonably necessary to carry out the purpose to be served or where it takes such action not in the exercise of a sound judgment but from improper motives or without sufficient understanding, there would seem to be no adequate remedy which the board of education might effectively invoke. The legislature, however, evidently deemed it necessary in the interests of sound municipal finance to give to town boards of finance the powers we have outlined. If such boards do not exercise their judgment intelligently, fairly and disinterestedly, the situation is one, unfortunately not unknown, wherein a public official fails properly to perform the duties of his office, and the remedy is that inherent in the theory of representative government, to replace him by another. If the result brought about by the statutes, which are evidently designed to produce a nice balancing of powers between the two boards, does not serve the public interests, the recourse is not, where no justiciable rights are involved, to seek to make the courts arbiters in a controversy essentially political, but to ask the legislature to change or better define the respective powers of the boards."

We have already referred to the portion of § 903 (a) of the Waterbury charter which provides that "[t]he board of education shall appoint a superintendent of schools and shall decide the number of principals, assistants and teachers to be employed. It shall fix their salaries, subject to the approval of the board of finance." The association has taken the position that when viewed in light of prior versions of this section of the charter and the provisions of General Statutes §§ 10-220 and 10-222 and our interpretation of those statutes, this provision of the charter requiring approval of salaries by the

board of finance is invalid and no longer controlling. We do not agree and have concluded that § 903 (a) of the Waterbury municipal charter is a valid special act and at the time in question was not in conflict with any of the public acts cited by the association. The predecessor of § 903 is found in an 1899 Special Act of the legislature. 13 Spec. Acts, No. 498.[1] This earlier enactment has substantially the same meaning as its modern day counterpart which finds its origin in the 1931 revision of the charter.[2] In comparing this section of the present charter with its predecessor, the association points out that in the earlier enactment the phrase "except as hereinafter provided" was used to qualify the sentence concerning the power of the board of finance over the salaries of principals, assistants, teachers, clerks, inspectors, other officers and employees. In the later special act, the language "unless otherwise provided" was substituted in a similar but not identical context. In the view of the association, this change is significant since it claims that the change shows an intention on the part of the legislature to assure that conflicts with other acts of the legislature would be resolved in favor of the General Statutes and not the special act. Thus, they maintain that "unless

[1] "[13 Spec. Acts, No. 498] Sec. 7. The board of education shall appoint a superintendent of schools, and shall decide the number of principals, assistants, and teachers to be employed. It may appoint or employ a clerk, an inspector of buildings, and such other officers and employees as may be necessary for the proper conduct of its business. It shall fix their salaries, subject to the approval of the board of finance, and prescribe their terms of office, and their duties, in each case, except as hereinafter provided."

[2] "[21 Spec. Acts, No. 499, p. 641] Sec. 269. POWERS AND DUTIES. The board of education shall appoint a superintendent of schools and shall decide the number of principals, assistants and teachers to be employed. It shall fix their salaries, subject to the approval of the board of finance, and prescribe their terms of office and their duties, in each case unless otherwise provided."

otherwise provided" connotes a broader legislative spectrum than "except as hereinafter provided." In this context they point out that Public Acts 1909, charter 146, § 4, the predecessor of § 10-220 of the General Statutes, and Public Acts 1923, chapter 248, the predecessor of § 10-222 of the General Statutes, were passed prior to the 1931 revision of the Waterbury charter. As we have noted, these sections of the General Statutes provide that boards of education shall have charge of schools in their respective towns and shall have the power, in their discretion, to spend funds appropriated for school purposes. The association argues that the change of the qualifying language in the Waterbury charter was made by the legislature with cognizance of a latent conflict between the General Statutes and the charter itself. It thus concludes that "unless otherwise provided" was inserted to show that the provisions of the General Statutes were to control.

We find little or no merit to this argument for several reasons. First, we find no necessary conflict between the aforementioned public acts and the special acts which constitute the Waterbury charter. Section 10-220 of the General Statutes confers general powers on boards of education and includes the express obligation to "maintain . . . good public elementary and secondary schools." Section 10-222 states that after an appropriation is made the money so appropriated may be spent at the discretion of the board of education. See *Board of Education* v. *Ellington*, 151 Conn. 1, 9, 193 A.2d 466. Neither of these statutes contains provisions inconsistent with the provisions of the Waterbury charter which are designed to facilitate the initial appropriation of funds for teachers' salaries. The charter provides that the board of education shall "fix" the

salaries but before a salary contract becomes binding on the municipality that fixing is subject to approval by the board of finance. The charter does not purport to provide that the board of education may not, if it so chooses, in the first instance, exercise its common-law and statutory power to fix salaries either before or after a local appropriation for education. Rather, it simply provides that the fixing of such salaries shall "be subject to the approval of the board of finance." This provision is not necessarily inconsistent with the obligation of the board of education to maintain good public elementary and secondary schools.

Repeals by implication are not favored and will never be presumed where the old and new statute may well stand together. *Fair Haven & W.R. Co.* v. *New Haven,* 75 Conn. 442, 447, 53 A. 960; *Bissell* v. *Dickerson,* 64 Conn. 61, 29 A. 226; *Windham County Savings Bank* v. *Himes,* 55 Conn. 433, 12 A. 517. The special act vesting a right of approval in the board of finance was reenacted by the General Assembly following the enactment of what are now General Statutes §§ 10-220 and 10-222. Furthermore, "[a] special and local statute, providing for a particular case or class of cases, is not affected by a statute general in its terms, broad enough to include cases embraced in the special law, unless the intent to repeal or alter is manifest. . . . So far as the provisions of the charter are necessarily inconsistent with the general and earlier statute, the provisions of the former are controlling." *State ex rel. Wallen* v. *Hatch,* 82 Conn. 122, 124, 72 A. 575. And, "[i]f courts can by any fair interpretation find a reasonable field of operation for both statutes without destroying or perverting their evident meaning and intent, it is the duty of the courts to do so, thus rec-

onciling them and according to them concurrent effect. *Leete* v. *Griswold Post,* 114 Conn. 400, 405, 158 A. 919; *Costa* v. *Reed,* 113 Conn. 377, 385, 155 A. 417, and cases cited; 1 Sutherland, Statutory Construction (3d Ed.) § 2014." *Shanley* v. *Jankura,* 144 Conn. 694, 702, 137 A.2d 536.

Another claim made by the association is that the restrictive provisions of the Waterbury charter are invalid in light of 1965 Public Act No. 298, which stated in part: "Sec. 3. The local or regional board of education and the organization designated as exclusive representatives for the appropriate unit, through designated officials or their representatives, shall have the duty to negotiate with respect to salaries and other conditions of employment, and such duty shall include the obligation of such board of education to meet at reasonable times, including meetings appropriately related to the budget-making process, and confer in good faith with respect to salaries and other conditions of employment, or the negotiation of an agreement, or any question arising thereunder and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation shall not compel either party to agree to a proposal or require the making of a concession."

The association maintains that the use of the word "contract" in this act indicates a legislative intent to add a binding effect to a negotiated salary agreement. In this regard, they rely on this court's decision in *State ex rel. Rourke* v. *Barbieri,* 139 Conn. 203, 91 A.2d 773, wherein is was stated that, if it can be prevented, no clause, sentence or word in a statute shall be considered superfluous, void or insignificant.

The cited rule of statutory construction is cor-

rectly stated but the rule has no relevance to the questions involved here. When interpreting the meaning of an act of the legislature, we attempt to determine the intent of the legislature as expressed by the common and approved usage of the words in the statute. General Statutes § 1-1; *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 100, 291 A.2d 721; *Klapproth* v. *Turner,* 156 Conn. 276, 280, 240 A.2d 886. The statute requires that the local or regional board of education must negotiate in good faith with respect to salaries and other conditions of employment. Once there has been a meeting of the minds, either party may request that the terms of the agreement be incorporated in a written contract. Nowhere does that act say who should approve the contract before it becomes binding on the municipality or whether approval of any body other than the board of education is required. To ascertain the meaning of the statute as it applies to the city of Waterbury, it must be read in the context of the special acts which govern the formation of binding contracts for teachers' salaries in that city. It is presumed that the legislature intended that the statute be read in light of existing legislation; *Hurlbut* v. *Lemelin,* 155 Conn. 68, 74, 230 A.2d 36; and the provisions of the special act continue in effect where they were not inconsistent with the provisions of the statute or where the provisions of both can be reconciled.

The association argues that the use of the words "agreement" and "contract" in the statute is particularly significant and that it shows a legislative intention to repeal all prior inconsistent legislation. We find no inconsistency here and no clear intent to repeal the relevant portions of the Waterbury charter. In this regard we find it significant that No. 159

of the 1965 Public Acts passed during the same session of the legislature granting collective bargaining rights to municipal employees other than teachers, contained a specific provision in § 8 (c) that "[n]otwithstanding any provision of any general statute, charter, special act or ordinance to the contrary, the budget appropriating authority of any municipal employer shall appropriate whatever funds are required to comply with a collective bargaining agreement which has been approved by the legislative body of such municipal employer." No such provision was included in 1965 Public Act No. 298 granting teachers the right to negotiate with boards of education and it was not until the adoption in 1969 of what is now General Statutes § 10-153g that similar language was adopted with reference to contracts negotiated between boards of education and bargaining agents for teachers.

We turn now to a particular consideration of each of the three cases before us.

## I

### WATERBURY TEACHERS ASSOCIATION *v.* ARNOLD FURLONG ET AL.

In this case the plaintiffs claimed a writ of mandamus, damages and a declaratory judgment determining the answers to eight questions. Included as plaintiffs are several individual members of the association whom we shall refer to as the teachers. The defendants are the mayor, the budget director and auditor, the comptroller, the board of finance and the board of aldermen of the city of Waterbury. The parties have stipulated the facts to be as follows: Prior to January 1, 1967, the teachers, through the association, negotiated an agreement

with the Waterbury board of education. While negotiations were continuing but before any contract was signed, the board of aldermen adopted a budget for the city. Subsequent to the adoption of the budget, an agreement between the board of education and the association was signed which contained a provision that the teachers were to receive a raise in pay pertaining to the rating system from step D to step E for the contract period. Although the total budget contained sufficient funds for payment of the raises, the budget contained no specific appropriation to fund this particular provision of the agreement. After the signing of the agreement, the defendant board of aldermen voted not to appropriate any funds to pay the teachers the ratio increases called for by the agreement. The defendant board of finance voted to support the position taken by the board of aldermen and to forbid payment of the salaries based on step E of the ratio system. The defendant Arnold Furlong, budget director and auditor of the city of Waterbury, and the defendant Sherwood Rowland, comptroller of the city of Waterbury, were instructed by the board of finance not to activate step E. As a result, the teachers did not receive the raise in pay for which they had negotiated. This litigation was then commenced to compel by mandamus the payment of the increased compensation, to obtain an award of damages, and to seek answers to several questions dealing with the respective powers and obligations of the Waterbury board of education, the Waterbury board of finance and the Waterbury board of aldermen.[3]

The trial court, having heard the parties, noted

---

[3] "(a) Whether the Board of Finance and/or the Board of Aldermen of the City of Waterbury have legal authority to approve or disapprove salary items which have been established by contract be-

in its memorandum of decision that "[t]he questions asked in paragraphs (a) through (h) of the second or declaratory judgment prayer for relief all are answered in the affirmative to the extent necessary to be consistent with the results reached herein" and directed that judgment be rendered for the defendants. The judgment as rendered did not purport to give answers to the questions but merely found

tween the Waterbury Teachers Association and the Board of Education of the City of Waterbury in accordance with the provisions of the General Statutes.

"(b) Whether the Board of Finance and/or the Board of Aldermen of the City of Waterbury have legal authority to refuse to appropriate sufficient monies to carry out the terms of a contract entered into by and between the Waterbury Teachers Association and The Board of Education of the City of Waterbury in accordance with the provision of the General Statutes.

"(c) Whether the Board of Finance and/or the Board of Aldermen of the City of Waterbury have legal authority to transfer funds from or within the Budget of the Board of Education of the City of Waterbury.

"(d) Whether Arnold Furlong as Auditor and Budget Director of the City of Waterbury has legal authority to refuse to sign the pay rate cards submitted by the Board of Education of the City of Waterbury.

"(e) Whether Frederick W. Palomba as Mayor of the City of Waterbury has legal authority to refuse to sign the pay rate cards submitted by the Board of Education of the City of Waterbury.

"(f) Whether the Board of Aldermen of the City of Waterbury has any control over specific portions of the agreements concerning salaries and other conditions of employment drawn or to be drawn between the members of the Waterbury Teachers Association and the Board of Education of the City of Waterbury.

"(g) Whether the Board of Aldermen of the City of Waterbury has the right to reject all or any part of the agreements concerning salaries and other conditions of employment drawn or to be drawn between the members of the Waterbury Teachers Association and the Board of Education of the City of Waterbury.

"(h) Whether the Board of Aldermen of the City of Waterbury has the legal right to refuse to legislate funds into existence for the purposes of carrying into effect the agreements concerning salaries and other conditions of employment drawn or to be drawn between the members of the Waterbury Teachers Association and the Board of Education of the City of Waterbury."

the issues for the defendants and rendered judgment for them. The ratio decidendi of the decision was set out in another memorandum of decision filed in a companion case entitled *State ex rel. Board of Education* v. *Quinn,* 28 Conn. Sup. 265, 258 A.2d 476. A copy of the latter memorandum was annexed to the short memorandum of decision filed in this case. No appeal was taken to this court from the judgment rendered in the *Quinn* case.

The plaintiff's first assignment of error is the conclusion of the trial court that the decision of the central issue in the *Quinn* case was dispositive of the issues raised in this case. The *Quinn* case concerned essentially the same type of conflict in a different fiscal year. The court decided that the board of finance and the board of aldermen had the ultimate right of review and control over teachers' salaries regardless of an agreement negotiated pursuant to the provisions of Public Act No. 298 of the 1965 special session of the General Assembly.

The plaintiff urges that the application of the decision in the *Quinn* case to the present case is erroneous since: (1) The parties are different; (2) the theories of recovery and claims for relief are different; (3) the contracts are different with different violations by different defendants in each case; (4) the boards of aldermen and finance in this case voted not to appropriate money to pay the teachers' raises after the adoption of the budget and after the agreement rather than at the time they adopted the budget, as in the *Quinn* case; and (5) the agreement in this case was entered into after the adoption of the budget for the year in question rather than prior to the adoption of the budget, as in the *Quinn* case. Since the *Quinn* case has not been appealed to this court, it would be inappropriate for us to rule on the

validity of the decision in that case. Since, however, the parties in this case stipulated that the stipulation of facts filed in the *Quinn* case be made a part of the record in this case and in this case the court expressly found that the determination of the central issue in the *Quinn* case was determinative of the central issue in this case, it is necessary to consider the two cases in that context.

In doing so we find that the time of the making of the compensation contract is of little significance. Whether the budget had been acted on by the board of aldermen does not affect the binding nature of the negotiated contract. To be legally binding, the fixing of the enumerated salaries was, under the Waterbury charter, subject to the approval of the board of finance unless the payment of that rate of compensation was reasonably necessary for the board of education to fulfill its statutory obligation under General Statutes § 10-220 to maintain "good public elementary and secondary schools." In this opinion we will hereafter refer to this latter circumstance where the board of education may bind the municipality without the benefit of approval by the board of finance as the "overriding exception." Thus, in short, if the salaries fixed under the contract were not approved by the board of finance the contract could not be legally binding on the board of education or the city unless by operation of General Statutes § 10-220. The record discloses that the negotiated compensation contract was not approved by the board of finance and there is no finding that the "overriding exception" should apply since there was no claim that the payment was necessary for the board of education to comply with the directive contained in § 10-220. Under the circumstances, the salary agreement negotiated by the

association and the board of education was not binding on the board of education and the city.

The plaintiff asserts that even if the compensation contract was not legally binding on the board of education that, nevertheless, the board, acting under the authority of General Statutes § 10-222, could pay the increased salaries specified in the agreement by authorizing the expenditure of funds appropriated in the budget for other purposes. As we have noted, § 10-222 provides that "[t]he money appropriated by any city, town or school district for the maintenance of public schools shall be expended by and in the discretion of the board of education. Any such board may transfer any unexpended or uncontracted-for portion of any portion of any appropriation for school purposes to any other item of such itemized estimate." See *Board of Education* v. *Ellington,* 151 Conn. 1, 9, 193 A.2d 466. In support of its assertion, the plaintiff relies on the holding of this court in *State ex rel. Board of Education* v. *D'Aulisa,* 133 Conn. 414, 52 A.2d 636. That case held that the function of the comptroller of the city of Bridgeport was a ministerial one in certifying that sufficient funds appropriated to the board of education were available for the payment of payroll items presented to him for payment by the board of education and he had no discretion to refuse such certification on the ground that the amounts presented, when calculated in terms of the entire fiscal year, would substantially exceed the appropriation made for payroll purposes. It is unnecessary to decide whether in the present case the board of education could, under the provisions of § 10-222, have required payment of the additional compensation by transfer of some portion of some other appropriation for school purposes in light of the provisions of § 903 (c) of

the Waterbury charter. This section, apparently unique to the Waterbury charter, and reenacted in the 1931 and 1939 Special Acts, all subsequent to the enactment of General Statutes § 10-222, provides: "The board of education herein provided for shall have the entire charge and direction of all the public schools and shall have the power to construct . . . all school buildings and, subject to the approval of the board of finance, shall have control of the expenditure of all moneys appropriated for the support of same and shall be subject to all the general duties of boards of education in this state, *as far as the same are consistent with the terms hereof."* (Emphasis supplied.) Whether the board of education had authority to make such a transfer, it was not obligated to do so and in the absence of some effective affirmative act by the board of education directing the payment of the step E salaries the plaintiff is powerless to compel the payment. It does not appear that the board of education performed the essential affirmative act.

From the record and stipulated facts, it appears that the board of education, after the prohibiting votes by the board of finance and board of aldermen went no further than to request the mayor for funds for the salary account to pay step E of the ratio system. This request was vetoed by the mayor and no action was taken by the board of education to override that veto. Section 902 of the Waterbury charter provides that the mayor may, within ten days, veto any vote of the board of education and that the board of education may override that veto by an affirmative vote of two-thirds of the full membership of the board. 21 Spec. Acts, No. 499, § 268. The board of education never overrode the mayor's veto nor does it appear from the record be-

fore us that there was any attempt by the board of education to reconsider the issue after the veto. Accordingly, the record is barren of any showing that the board undertook such a rearrangement of budget items and appropriations as would be required by § 10-222 and the relevant precedent in this area. There was no act by the board of education pursuant to its authority under § 10-222 which unequivocally directed that salaries be paid at the step E level.

We find no error in the judgment of the court denying the issuance of a writ of mandamus. If a public official or public agency has a duty to perform a particular act and fails in the discharge of that duty, a writ of mandamus is the proper remedy for compelling performance of the act. Where the official or agency is authorized to exercise a discretionary power, mandamus does not lie. *Hannifan* v. *Sachs,* 150 Conn. 162, 167, 187 A.2d 253; see General Statutes § 52-485. Relief by way of mandamus, therefore, is only available to one who has a complete and immediate right that the public act be done. *Ballas* v. *Woodin,* 155 Conn. 283, 284, 231 A.2d 273; *State ex rel. Scala* v. *Airport Commission,* 154 Conn. 168, 176, 224 A.2d 236; *Boyko* v. *Weiss,* 147 Conn. 183, 186, 158 A.2d 253; 52 Am. Jur. 2d, Mandamus, § 64; 55 C.J.S., Mandamus, § 53. There was no error in the conclusion of the court that the plaintiff had failed to establish the existence of an immediate right to compel that the defendants "take the steps necessary to grant the plaintiffs said raise in pay retroactive to January 1, 1967."

The remaining assignments of error require but brief discussion. The first two assert error on the part of the court in overruling the plaintiff's claims of law and sustaining those of the defendants. We

have already adequately discussed the parties' respective claims of law and find no error in the court's decision so far as they are relevant to the judgment rendered in this case.

The remaining claim assigns error on the part of the court in reaching eight conclusions of law. Only the first two of the conclusions attacked are relevant to the decision on the merits of the plaintiff's claims for coercive relief. They concern: (a) the respective powers of the boards of education, finance and aldermen to approve salary items included in the January 1, 1967, agreement negotiated between the board of education and the association, and (b) the authority of the boards of finance and aldermen to refuse to appropriate sufficient funds to carry out the salary terms of such an agreement. For the reasons which we have discussed at length in this opinion, we find no error in the conclusions reached by the court on these issues.

The remaining conclusions are not germane to the issues of the coercive relief requested as such issues have been presented and briefed. The assignments of error as to them have not been briefed at all by the plaintiff except insofar as they are relevant to the first two conclusions attacked. The others relate to the last six of the questions as to which the plaintiff sought a declaratory judgment. See footnote 3, supra. As we have indicated, the judgment of the court did not purport to answer these questions. It merely found the issues for the defendants, which is " 'tantamount to a conclusion that the plaintiffs failed to establish a right to a declaratory judgment.' " *United Oil Co.* v. *Urban Redevelopment Commission,* 158 Conn. 364, 374, 260 A.2d 596. "Because of this finding by the court . . . the claim for a declaratory judgment is removed from further

consideration on this appeal." *Country Lands, Inc.* v. *Swinnerton,* 151 Conn. 27, 31, 193 A.2d 483. That it was no oversight that the judgment was thus limited and a declaratory judgment answering the questions was not rendered is indicated by the statement in the court's memorandum of decision: "The questions asked in paragraphs (a) through (h) of the second, or declaratory judgment prayer for relief all are answered in the affirmative to the extent necessary to be consistent with the results reached herein." As thus limited and insofar as they are relevant to a review of the judgment of the court, we find no error in the conclusions of the court. Beyond that it is unnecessary for us to consider them on this appeal.

## II

### WATERBURY TEACHERS ASSOCIATION *v.* BOARD OF EDUCATION OF THE CITY OF WATERBURY

This is an action claiming $40,000 in damages as the result of the failure of the defendant to pay salaries as set out in an agreement between the association and the Waterbury board of education. The stipulation, which was signed by both parties, has set out the facts which may be summarized as follows: On or about September 1, 1965, the parties entered into a written contract which was negotiated pursuant to Public Act No. 298 of the February, 1965, special session of the General Assembly. Paragraph III of that agreement provided that "[t]he Board of Education will pay teachers having fifteen (15) credits in a planned program beyond the Bachelor's Degree, one-half the difference between the Bachelor's Degree scale and the equivalent step on the Master's Degree schedule." Paragraph IV of

that contract provided that "[t]he Board of Education will pay teachers having fifteen (15) credits in a planned program beyond the Master's Degree, one-half the difference between the Master's Degree scale and the equivalent step on the Six Year Schedule." Paragraph X (b) of that contract stated "effective September 1, 1966 the Board of Education of the City of Waterbury will adopt and implement a policy of paying teachers an additional increment after the fifteenth, twentieth, twenty-fifth, and thirtieth year of continuous service in the City of Waterbury." On November 28, 1965, the Waterbury board of finance met, reviewed and considered the contract and partially disapproved the provisions of paragraphs III and IV as stated in the stipulation of facts: "(a) On Motion of Commissioner Santaguida, duly seconded, it was voted unanimously that the Teachers' salary agreement as submitted by the Board of Education was accepted and approved with the exception that the in-between degree credits aggregating 15 is not to be effective until September 1966." On December 20, 1965, the board of aldermen of the city of Waterbury made appropriations for the city and adopted a budget. That budget approved the deletions by the board of finance of the funds necessary to implement paragraphs III and IV of the contract although it contained an item which in the education budget read: "Provisions for Intermediate Degree Attainment and Longevity $50,000.00." The teachers have not received any pay under paragraphs III, IV or X (b) of the contract. The plaintiff has appealed from the judgment of the trial court which was rendered for the defendant.

The plaintiff, as in the Furlong case, has assigned as error the conclusion of the trial court that its

decision rendered the same day in the companion case, *State ex rel. Board of Education* v. *Quinn,* 28 Conn. Sup. 265, 258 A.2d 476, was also dispositive of the issues in this case. While it is true that there are numerous differences between the *Quinn* case and the present case, both in terms of fact and legal issues, we do not find that read in the context of the court's finding and other conclusions it was error to conclude that the ratio decidendi of the court in the *Quinn* case was dispositive of the controlling issues raised in this case. We have already discussed at length in this opinion the conclusions of the trial court reached in the *Quinn* and Furlong cases relative to the respective powers of the Waterbury boards of education, finance and aldermen in light of the governing provisions of the General Statutes and provisions of the Waterbury charter. The same basic questions are involved in the present case. The decision in the *Quinn* case did not render the present case res judicata and the court did not so conclude. It did conclude in the *Quinn* case that the provisions of the charter of the city of Waterbury with particular reference to §§ 903 (a), 1336 and 1338 do grant to the Waterbury board of finance and board of aldermen, respectively, "the ultimate review and control of teachers' salaries and the amounts thereof" regardless of an agreement negotiated and executed by the board of education and the Waterbury Teachers Association pursuant to 1965 Public Act No. 298. We interpret the attacked conclusion in the present case as no more than a statement of the court that the decision which it had reached and announced the same day in a companion case applied to the same central issues in the present case. That the court did not ignore the different factual situations and other issues in-

volved in the present case is indicated by the findings of the court and the remaining conclusions which it reached. In this context we find no error in the attacked conclusion of the court although, as indicated in our opinion in the Furlong case, supra, we do not agree that the powers of the Waterbury boards of finance and aldermen are those of "ultimate" review and control of teachers' salaries where a failure or refusal on the part of those boards to approve and provide reasonably necessary salaries would nullify the basic obligation of the board of education to "maintain . . . good public elementary and secondary schools." This is the "overriding exception" to which we earlier referred.

The plaintiff's second assignment of error is that the court erred in reaching certain other conclusions of law and in overruling the plaintiff's claims of law relative to the powers of the Waterbury board of finance and board of aldermen. To the extent that these conclusions are at variance with what we have already stated with respect to the extent of these powers and "ultimate" control over teachers' salaries as affected by the "overriding exception," these assignments of error are well taken, but that fact alone does not render the judgment of the court erroneous. "Simply because the trial judge relied on the wrong theory does not render the judgment erroneous. A correct decision can be sustained although it may have been placed on the wrong grounds." *Powers* v. *Common Council,* 154 Conn. 156, 161, 222 A.2d 337; *Emerick* v. *Monaco & Sons Motor Sales,* 145 Conn. 101, 106, 139 A.2d 156.

For the reasons which we discussed in the Furlong case, supra, we find no error in the conclusion of the court that the relevant provisions of the charter of the city of Waterbury, including § 903 (a)

which vests a power of approval of teachers' salaries in the board of finance, control over the terms of an agreement negotiated under the provisions of Public Acts 1965, No. 298. Nor, in the absence of any finding that the "overriding exception" circumstance existed, do we find any error in the conclusions of the court that the boards of finance and aldermen possessed legal authority in the exercise of their judgment to refuse to appropriate funds to implement the financial terms of paragraphs III and IV of the agreement negotiated with the plaintiff. The record clearly indicates that the board of finance approved the salary agreement "with the exception that the in-between degree credits aggregating 15 is not to be effective until September 1966," and the budget as adopted by the board of aldermen approved the deletions made by the board of finance of funds necessary to implement paragraphs III and IV of the agreement. Under these circumstances, there was no error in the judgment denying the plaintiff recovery for these items.

The provisions of paragraph X (b) of the agreement present a different problem. These provisions came within the blanket approval of the agreement by the board of finance after the exclusion of funds to implement paragraphs III and IV.

The plaintiff maintains that the approval of paragraph X (b) by the board of finance made payments under that paragraph obligatory on the board of education. Paragraph X (b), however, stated only that "effective September 1, 1966" the board "will adopt and implement a policy of paying teachers" an additional increment at various stages of their years of continuous service after the fifteenth year. Nowhere is it stated what amounts would be paid or when. It is stated only that a policy would be

adopted and implemented. We have combed the record but are unable to find that, in fact, a policy was adopted or implemented prior to a later agreement between the association and the board of education. It appears that between September 1, 1966, and January 1, 1967, representatives of the plaintiff and the board of education did engage in discussions concerning the adoption and implementation of a policy for payment of additional increments to teachers attaining fifteen, twenty, twenty-five and thirty years of service and that a new agreement between the parties was negotiated effective January 1, 1967, which provided that the additional increments agreed on in the 1965 negotiations should be paid after September 1, 1967. In view of this finding, on the record we cannot hold that the court was in error in concluding that the plaintiff has failed to prove any liability on the part of the defendant board and in finding the issues for the defendant.

We find no error in this case.

### III

### WATERBURY BOARD OF EDUCATION ET AL. *v*. WATERBURY TEACHERS ASSOCIATION

This is an appeal from a judgment of the Superior Court granting an application to vacate a portion of an arbitrator's award. The record discloses the following facts: On September 18, 1967, the plaintiff and defendant executed a contract which had been negotiated pursuant to the provisions of Public Acts 1965, No. 298, as amended by Public Acts 1967, No. 752. Article XXVI, § 11 of the agreement provided: "Effective January 1, 1968, Proposal 1 of the Actuarial Report for the City of Waterbury Retirement System, concerning improved benefits

for teacher participants, prepared by Warner and Watson, Inc., July 6, 1967, shall be implemented." Proposal 1 of the Warner-Watson Actuarial Report contains the following provision: "(2) Reduce the participants' contribution to 1% of Salary." Section 2731 of the Waterbury charter states, in part: "The rate of contributions to be made by a teacher participant of the retirement system shall be three percent of pay." At its budget hearing of November 21, 1967, the board of finance specifically voted to disapprove the reduced pension contribution provided for in the contract.

Article XXXI of the agreement is entitled "Grievance Procedure." A grievance is defined by article XXXI, § B, paragraph 1 as "a claim by a teacher or a group of teachers that there has been violation, misinterpretation or misapplication of the terms of this Agreement." The question concerning the proper rate of contribution for teachers' pensions, together with another alleged grievance not involved in this appeal, was submitted by the parties to the American Arbitration Association and arbitrated by the Honorable Nathan Cayton of Washington, D.C. On May 18, 1969, Judge Cayton made the following award with respect to the submission involved in this appeal: "The Waterbury Board of Education is obligated under Article XXVI, Section 11 of the Agreement to compute the contributions to be made by teacher participants in the retirement system, at the rate of one per cent of pay, effective as of January 1, 1968." The plaintiff applied to the Superior Court, pursuant to the provisions of General Statutes § 52-418, for an order vacating the award on the ground that the arbitrator had exceeded his powers. The court found that the arbitrator had exceeded his powers and that the award, insofar as

it pertained to the pension contribution question, was illegal and unenforceable. Accordingly, the court entered judgment vacating the award insofar as it pertained to the pension contribution question. This appeal has been taken by the defendant from that judgment.

The defendant has assigned as error several of the findings and conclusions of law of the trial court, particularly those which relate to whether the submission to arbitration was restricted, whether the arbitrator exceeded his powers, and whether the arbitration clause of the contract was designed only to remedy personal grievances. It is evident from our examination of the record that it is not necessary for us to discuss any of these claims of error except as they relate to the issue as to whether the arbitrator did exceed his powers.

The tenor of our opinion in this trilogy of cases has been that the special laws which make up the Waterbury city charter are valid and governing insofar as they apply to contracts and expenditures of the board of education which are not within the "overriding exception" for expenditures which are necessary for the fulfillment of the board's statutory obligation to "maintain . . . good public elementary and secondary schools." Section 2731 of the charter provided, in part, that "[t]he rate of contributions to be made by a teacher participant of the retirement system shall be three percent of pay." This provision is mandatory. It cannot be varied by contract or by other municipal action. *State ex rel. Kirby* v. *Board of Fire Commissioners,* 129 Conn. 419, 426, 29 A.2d 452; see 10 McQuillin, Municipal Corporations (3d Ed.) § 29.06; 56 Am. Jur. 2d, Municipal Corporations, Counties, and Other Political Subdivisions, §§ 502–4. Notwithstanding this

charter provision, the parties agreed in article XXVI, § 11 of their contract that "effective January 1, 1968, Proposal 1 of the Actuarial Report for the City of Waterbury Retirement System, concerning improved benefits for teacher participants, prepared by Warner and Watson, Inc., July 6, 1967, shall be implemented." Proposal 1 of that report was: "Reduce the participants' contribution to 1% of salary." Thus, the legislative act which is a portion of the charter of the city of Waterbury and the contract between the parties to this action prescribe different rates of contribution to be made by a teacher participating in the retirement system.

This conflict can only be resolved in favor of the charter provision, since neither the board of aldermen, board of finance, nor board of education has the power to vary the terms of a special act. What the charter commands must be obeyed. *State ex rel. Southey* v. *Lashar,* 71 Conn. 540, 547, 42 A. 636. Agreements between municipalities and third parties must conform with the mandate of the municipal charter. *Food, Beverage & Express Drivers Local Union* v. *Shelton,* 147 Conn. 401, 405, 161 A.2d 587.

The agreement which gave rise to the present dispute and submission to arbitration itself provided in article 1, § 4: "The Board and the WTA accept the provisions of this agreement as commitments which they will cooperatively and in good faith honor, support, and seek to fulfill, subject to the ability of the respective parties, to perform under governing law." Obviously, the board of education could not "under governing law" legally comply with the provision for a reduction of the percentage of teachers' contributions to the retirement system. As the trial court stated in its memorandum of decision: "An award which seeks to force the board of educa-

tion and, indirectly, the board of finance and board of aldermen of the City of Waterbury to comply with the terms of an agreement which are clearly violative of the City charter, is against public policy. The arbitrator exceeded his powers and the award, insofar as it pertains to the pension contribution question is illegal and unenforceable."

We find no error in this conclusion or in the judgment of the trial court vacating the award insofar as it pertains to the pension contribution provision.

There is no error.

In this opinion the other judges concurred.