## New Haven et al. *v.* State Board of Education et al.
### (14729)

Peters, C. J., Borden, Berdon, Palmer and Santaniello, Js.

Argued December 8, 1993—decision released March 15, 1994

*Martin S. Echter,* deputy corporation counsel, with whom was *Karen Goodrow,* assistant corporation counsel, for the appellants (plaintiffs).

*John R. Whelan,* assistant attorney general, with whom were *Bernard F. McGovern, Jr.,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, for the appellees (named defendant et al.).

*Lubbie Harper, Jr.,* for the appellee (defendant New Haven board of education).

BERDON, J. The principal issue in this administrative appeal is whether the obligation of a town to appropriate sufficient funds to a local board of education to meet the minimum expenditure requirement (MER) of General Statutes § 10-262j has been met if the appropriation is sufficient to meet the MER alone but not

sufficient for other educational requirements.[1] A hearing board of the defendant state board of education (state board), after an investigation and evidentiary hearing, determined that the plaintiffs, the city of New Haven and its board of finance (city), had failed to appropriate sufficient funds to the defendant New Haven board of education (New Haven board) to meet the MER for the 1990-91 school year. The state board consequently ordered the city to make available additional funds, and ordered the New Haven board to budget these funds appropriately. The city appealed to the Superior Court, which dismissed the appeal.[2] The

[1] More specifically, the plaintiffs claim before this court that the state board of education should not have: (1) applied a deferential standard of review under the circumstances of this case because the city allocated sufficient funds for the adequate funding of the MER alone, and the city intended its appropriation to fund the MER, but the New Haven board used some of the money to fund other programs; (2) placed the burden of proof on the city to show inaccuracies in the projected budget or budget items that represented an abuse of discretion on the part of the New Haven board; (3) relied on a budget projection supplied by the superintendent of the New Haven schools, rather than requiring actual evidence of underfunding; (4) compelled the city to pay the projected MER shortfall before the school year began, rather than waiting until such point during the school year when it would become certain that the MER was underfunded; (5) accepted the estimated expenditures of the New Haven board's proposed budget despite a claim that that board has historically estimated its expenditures inaccurately; and (6) relied on the superintendent's representations with regard to the projected budget absent a clear affirmative ratification of the budget by the New Haven board.

[2] The state board brought a separate action in the Superior Court to enforce its order. In the enforcement action, the court, *Fracasse, J.,* held a full evidentiary hearing, found in favor of the state board, and issued a temporary mandatory injunction that ordered the city to make available $2,056,930 for expenditure by the New Haven board on MER-eligible activities. *State Board of Education* v. *New Haven,* Superior Court, judicial district of New Haven, Docket No. 310838S (March 1, 1991); see General Statutes (Rev. to 1989) § 10-4b (c) (Superior Court is authorized to enforce orders of the state board). The city complied with the order.

In this administrative appeal, the trial court noted that a threshold issue was whether the appeal was moot, depriving the court of jurisdiction to hear it, because the city had complied with the temporary injunction and could not recoup the sums paid to meet the MER. The trial court decided

city appealed from this judgment to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

To place the issues raised by this case in their proper perspective, a review of the relationship between the state board of education, local boards of education and municipal governments is required. The constitution of Connecticut, article eighth, § 1, provides: "There shall always be free public elementary and secondary schools in the state. The general assembly shall implement this principle by appropriate legislation." This

that the appeal fell within the "capable of repetition, yet evading review" exception to the mootness doctrine. Although the parties have not argued mootness before this court, the issue implicates the subject matter jurisdiction of this court, and therefore we reach it on our own. *Hartford Principals' & Supervisors' Assn.* v. *Shedd,* 202 Conn. 492, 497, 522 A.2d 264 (1987).

"A well defined exception to the mootness rule is where the issue is 'capable of repetition, yet evading review .' . . . The time dimension that the name of the exception implies is necessary but not itself sufficient to invoke our appellate jurisdiction. Rather, we must look to additional factors to determine whether we should decide the issue even though it may have no immediate practical consequences to a party. . . . Some of those factors include whether the issue (1) could affect an ongoing program of the state penal or civil system, (2) could affect the complaining party in the future, and (3) involves a matter of public importance." (Citations omitted.) *Goodson* v. *State,* 228 Conn. 106, 115, 635 A.2d 285 (1993).

We conclude that the appeal falls within the requirements of the exception. The issue is apt to evade review because it involves an annual budget, and the Superior Court is authorized to order and did in fact order enforcement of the state board's decision, yet the city could not have recouped its additional appropriation once expended for educational purposes by the New Haven board even if the order were later determined on appeal to have been incorrect. Furthermore, the issue meets the three requirements of the exception reviewed in *Goodson.* The appeal involves an ongoing program of the state civil system, namely, public education and the MER. The appeal could affect the complaining party in the future; indeed, the city has brought to our attention a recent decision of the state board finding a MER shortfall and ordering relief against the city for the 1993-94 school year. Finally, the appeal certainly involves an issue of great public importance: the furnishing of a minimally adequate education for all of Connecticut's school children. We conclude that the appeal is not moot.

command of the state constitution places the ultimate responsibility for the education of the children of Connecticut on the state. *Murphy* v. *Board of Education,* 167 Conn. 368, 372, 355 A.2d 265 (1974); *West Hartford Education Assn., Inc.* v. *DeCourcy,* 162 Conn. 566, 573, 295 A.2d 526 (1972).

The state's responsibility for education is distributed through the following statutory framework. The state board is charged with "the broad and general power to supervise and control the educational interests of the state." *Board of Education* v. *Department of Education,* 198 Conn. 445, 450, 503 A.2d 1147 (1986); General Statutes § 10-4 (a) ("[s]aid board shall have general supervision and control of the educational interests of the state, which interests shall include preschool, elementary and secondary education, special education, vocational education and adult education").

General Statutes § 10-220[3] delegates the duty to provide and administer public education to local and

---

[3] General Statutes § 10-220 (a) provides: "Each local or regional board of education shall maintain good public elementary and secondary schools, implement the educational interests of the state as defined in section 10-4a and provide such other educational activities as in its judgment will best serve the interests of the school district; provided any board of education may secure such opportunities in another school district in accordance with provisions of the general statutes and shall give all the children of the school district as nearly equal advantages as may be practicable; shall have charge of the schools of its respective school district; shall make a continuing study of the need for school facilities and of a long-term school building program and from time to time make recommendations based on such study to the town; shall have the care, maintenance and operation of buildings, lands, apparatus and other property used for school purposes and at all times shall insure all such buildings and all capital equipment contained therein against loss in an amount not less than eighty per cent of replacement cost; shall determine the number, age and qualifications of the pupils to be admitted into each school; shall employ and dismiss the teachers of the schools of such district subject to the provisions of sections 10-151 and 10-158a; shall designate the schools which shall be attended by the various children within the school district; shall make such provisions as will enable each child of school age, residing in the district to attend some public day school for the

regional boards of education. *Waterbury Teachers Assn. v. Furlong,* 162 Conn. 390, 397, 294 A.2d 546 (1972). These local entities must, however, fulfill the educational interests of the state by meeting certain mandates. General Statutes (Rev. to 1989) § 10-4a.[4] Public education mandates include the following: adequate and reasonable pupil transportation for those students who need transportation; General Statutes §§ 10-76d (e) (1) and 10-220; *Waterford* v. *State Board of Education,* 148 Conn. 238, 243, 169 A.2d 891 (1961); special education services sufficient to meet the individualized needs of certain children in the locality; see General Statutes §§ 10-76a through 10-76ee; *Board of Education* v. *State Board of Education,* 179 Conn. 694, 702, 427 A.2d 846 (1980); and the MER. If the local board of education fails or is unable to implement the educational interests of the state by carrying out these mandates, the state board may conduct an investigation, hold an administrative hearing pursuant to the Uniform Administrative Procedure Act, order appropriate remedial

period required by law and provide for the transportation of children wherever transportation is reasonable and desirable, and for such purpose may make contracts covering periods of not more than five years; may arrange with the board of education of an adjacent town for the instruction therein of such children as can attend school in such adjacent town more conveniently; shall cause each child seven years of age and over and under sixteen living in the school district to attend school in accordance with the provisions of section 10-184, and shall perform all acts required of it by the town or necessary to carry into effect the powers and duties imposed by law."

[4] General Statutes (Rev. to 1989) § 10-4a, as amended by Public Acts 1989, No. 89-124, § 7, provides: "For purposes of sections 10-4, 10-4b and 10-220, the educational interests of the state shall include, but not be limited to, the concern of the state (1) that each child shall have for the period prescribed in the general statutes equal opportunity to receive a suitable program of educational experiences; (2) that each school district shall finance at a reasonable level at least equal to the minimum expenditure requirement pursuant to the provisions of section 10-262j an educational program designed to achieve this end; and (3) that the mandates in the general statutes pertaining to education within the jurisdiction of the state board of education be implemented."

steps, and, if necessary, enforce its order in the Superior Court. General Statutes (Rev. to 1989) § 10-4b.[5]

Because the state's educational duties are delegated to local boards of education and the towns must provide some of the funding for education, the financial relationship between the local board of education and the municipal government, in particular the board of

[5] General Statutes (Rev. to 1989) § 10-4b, as amended by Public Acts 1989, No. 89-124, § 8, provides: "(a) Any resident of a local or regional school district, or parent or guardian of a student enrolled in the public schools of such school district who has been unable to resolve a complaint with the board of education of such local or regional school district may file with the state board of education a complaint in writing, or the state board may initiate a complaint, alleging the failure or inability of the board of education of such local or regional school district to implement the educational interests of the state in accordance with section 10-4a. If the state board, or its designee, finds such complaint to be substantial, it shall notify the local or regional board of such complaint and shall designate an agent who shall conduct a prompt investigation in accordance with procedures established by said state board and report the results of such investigation to the state board. If the findings indicate that there is reasonable cause to believe that a local or regional board of education has failed or is unable to make reasonable provision to implement the educational interests of the state as defined in section 10-4a or that a local governmental body or its agent is responsible for such failure or inability, said state board shall conduct an inquiry. The state board of education shall give the board of education or a local governmental body or its agent involved the opportunity to be heard in accordance with the provisions of sections 4-176e to 4-184. Said state board may summon by subpoena any person whose testimony may be pertinent to the inquiry and any records or documents related to the provision of public education in the school district.

"(b) If, after conducting an inquiry in accordance with subsection (a) of this section, the state board finds that a local or regional board of education has failed or is unable to provide educational opportunities to meet the requirements of this section, sections 10-4a, as amended by section 7 of this act, 10-14q, 10-15c, 10-16, 10-16b, 10-42, subsection (a) of section 10-43, sections 10-47b, as amended by section 9 of this act, 10-53, 10-54, 10-66i, 10-71, 10-76d, subsection (h) of section 10-76f, and sections 10-76g, 10-76m, 10-76o, 10-97, 10-220, 10-227, 10-261, as amended by section 10 of this act, 10-262j, as amended by section 6 of this act, 10-263, 10-266j, 10-266m, 10-273a, 10-277, and 10-280a, the state board shall (1) require the local or regional board of education to engage in a remedial process whereby such local or regional board of education shall develop and imple-

finance of the town, is complex. See *Fowler* v. *Enfield*, 138 Conn. 521, 532, 86 A.2d 662 (1952). This court explained the financial relationship between these entities as follows: "Where a town board of education includes in the estimates it submits to a board of finance expenditures for a purpose which is not within statutory provisions imposing a duty upon it nor within one which vests it with a discretion to be independently exercised, the board of finance may, if in its judgment, considering not only the educational purpose to be served but also the financial condition of the town, it finds that the expenditure is not justified, decline to recommend an appropriation for it . . . where, however, the estimate is for an expenditure for a purpose

ment a plan of action through which compliance may be attained, or (2) order the local or regional board of education to take reasonable steps where such local or regional board has failed to comply with subdivision (3) of said section 10-4a. Where a local or regional board of education is required to implement a remedial process pursuant to subdivision (1) of this subsection, upon request of such local or regional board, the state board shall make available to such local or regional board materials and advice to assist in such remedial process. If the state board finds that a local governmental body or its agent is responsible for such failure or inability, the state board may order such governmental body or agent to take reasonable steps to comply with the requirements of said section 10-4a. The state board may not order an increase in the regular program expenditures, as defined in section 10-262f, as amended by section 3 of this act, of such local or regional board of education if such expenditures are in an amount at least equal to the minimum expenditure requirement in accordance with said section 10-262j, provided that an increase in expenditures may be ordered in accordance with section 10-76d. If the state board finds that the state is responsible for such failure, the state board shall so notify the governor and the general assembly.

"(c) Upon the failure of a local or regional board of education to implement a remedial process, or upon the failure of a local or regional board of education or local governmental body or its agent to comply with an order of the state board in accordance with subsection (b) of this section, said state board may seek an order from the superior court to compel such board of education to implement a remedial process or to compel a local or regional board of education or local governmental body or its agent to carry out the order of the state board of education.

"(d) The state board shall pursuant to the provisions of chapter 54 adopt regulations concerning procedures for purposes of this section."

which the statutes make it the duty of the board of education to effectuate or they vest in the board of education a discretion to be independently exercised as to the carrying out of some purpose, the town board of finance has not the power to refuse to include any appropriation for it in the budget it submits and can reduce the estimate submitted by the board of education only when that estimate exceeds the amount reasonably necessary for the accomplishment of the purpose, taking into consideration along with the educational needs of the town its financial condition and the other expenditures it must make. The board of finance in such a case must exercise its sound judgment in determining whether or to what extent the estimates of the board of education are larger than the sums reasonably necessary and if it properly exercises its discretion and the budget is approved by the town the board of education has no power to exceed the appropriations made. Thus . . . only when a board of education is acting directly and in a reasonable manner to fulfill a statutory duty can it accurately be said that it functions outside the established municipal governing structure. To hold otherwise would be tantamount to the giving of a blank check to boards of education to spend the money of the municipality without regard to economy, efficiency or other local needs." (Internal quotation marks omitted.) *Waterbury Teachers Assn.* v. *Furlong,* supra, 398–99.

In 1977, this court determined that the then existing system of school financing, relying principally on local property taxes, produced great inequalities in violation of the state constitution. *Horton* v. *Meskill,* 172 Conn. 615, 648–49, 376 A.2d 359 (1977) (*Horton I*). In *Horton I*, we reasoned that the state constitutional guarantee of free elementary and secondary education establishes a fundamental right. Id. Accordingly, we held that the equal protection clauses of the state con-

stitution require the state to subsidize education in a manner that provides all students in Connecticut's public elementary and secondary schools with "a substantially equal educational opportunity" by compensating for great discrepancies in local property tax revenues. Id.

The trial court in *Horton I* did not order a remedy. This court upheld the trial court's "decision to retain jurisdiction while the General Assembly was afforded an opportunity to take responsive legislative action. . . . The legislature in 1979 enacted, and in subsequent years amended, a plan intended to achieve equity in educational financing. Public Acts 1979, Nos. 79-128, 79-553; see General Statutes §§ 10-76f, 10-76g; §§ 10-261 through 10-263a; §§ 10-266m through 10-280a." *Horton* v. *Meskill*, 195 Conn. 24, 26, 486 A.2d 1099 (1985) (*Horton III*).[6] In *Horton III*, this court upheld this new legislative scheme for educational financing, describing it as having "two principal components: (1) the guaranteed tax base grant formula (GTB) and (2) the minimum expenditure requirement (MER). The GTB formula is a plan of state grants designed to provide towns with a state-guaranteed tax base for the financing of public school education. It is designed to distribute equitably state aid to towns that establish their eligibility through the MER, a formula that sets the minimum acceptable level of per pupil town expenditures." Id., 28–29. Although the statutory scheme has been revised from time to time since the decision in *Horton III*; see, e.g., Public Acts 1989, No. 89-124; Public Acts, Spec. Sess., June, 1991, No. 91-7; these two basic components continue to form the basis of the school financing scheme in Connecticut.

---

[6] *Horton* v. *Meskill,* 187 Conn. 187, 445 A.2d 579 (1982) (*Horton II*), involved the propriety of the denial of motions to intervene during the continuing jurisdiction following the decision on appeal in *Horton I*.

The MER component of the school financing scheme requires that each school system fund its "regular program expenditures"; General Statutes (Rev. to 1989) § 10-262f (17);[7] at a minimum level set by statutory formula in order to ensure that students having no special needs receive a minimally adequate education. General Statutes (Rev. to 1989) § 10-262j.[8] To ensure

[7] General Statutes (Rev. to 1989) § 10-262f (17), as amended by Public Acts 1989, No. 89-124, § 3, provides in relevant part: " 'Regular program expenditures' means (A) total current educational expenditures less (B) expenditures for (i) special education programs eligible for reimbursement pursuant to section 10-76g, (ii) pupil transportation eligible for reimbursement pursuant to section 10-266m, (iii) land and capital building expenditures, and equipment otherwise supported by a state grant pursuant to chapter 173, including debt service, provided, with respect to debt service, the principal amount of any debt incurred to pay an expense otherwise includable in regular program expenditures may be included as part of regular program expenditures in annual installments in accordance with a schedule approved by the state department of education based upon substantially equal principal payments over the life of the debt, (iv) health and welfare services for nonpublic school children, (v) adult education, (C) expenditures directly attributable to (i) state grants received by or on behalf of school districts except grants for the categories of expenditures listed in subparagraphs (B) (i) to (B) (v), inclusive, of this subdivision and except grants received pursuant to section 10-262i, section 10-262c of the general statutes, revision of 1958, revised to January 1, 1987, sections 10-257b to 10-257d, inclusive, and section 10-257f and except grants received pursuant to chapter 173, (ii) federal grants received by or on behalf of school districts except for adult education and federal impact aid and (iii) receipts from the operation of child nutrition services and student activities services, (D) expenditures of funds from private and other sources and (E) tuition received on account of nonresident students. . . ."

[8] General Statutes (Rev. to 1989) § 10-262j, as amended by Public Acts 1989, No. 89-124, § 6, provides: "(a) For the fiscal years ending June 30, 1990, June 30, 1991, and June 30, 1992, the regular program expenditures of a town shall be not less than the greater of (1) the product of (A) the target foundation multiplied by the number of total need students of the town for the prior school year and (B) the ratio of the town's grant entitlement for such year pursuant to section 10-262h divided by the town's target grant or (2) an amount equal to the sum of (A) the regular program expenditures for the town for the prior fiscal year and (B) the amount of the aid increase paid to the town as calculated pursuant to subsection (b) of this section.

"(b) For the purposes of subsection (a) of this section, the amount of the aid increase paid to a town shall be (1) for the fiscal year ending June 30,

that the MER calculation accurately reflects educational expenditures on children with no special needs, certain expenditures do not count toward the MER. General Statutes (Rev. to 1989) § 10-262f (17). These expenditures include, among others, special education, pupil transportation, land and capital expenditures, and adult education, and will be referred to as "MER-ineligible" for the purposes of this opinion. Expenditures that count toward the MER are referred to as "MER-eligible."

1990, the amount of aid to be paid to the town for the fiscal year ending June 30, 1990, pursuant to section 10-262i, as amended by section 5 of this act, less the base aid for the town, (2) for the fiscal year ending June 30, 1991, the amount of aid paid to the town for the fiscal year ending June 30, 1991, pursuant to said section, less the amount of aid paid to the town for the fiscal year ending June 30, 1990, pursuant to said section and (3) for the fiscal year ending June 30, 1992, the amount of aid paid to the town for the fiscal year ending June 30, 1992, pursuant to said section, less the amount of aid paid to the town for the fiscal year ending June 30, 1991, pursuant to said section.

"(c) Notwithstanding the provisions of subsection (a) of this section, for the years ending June 30, 1990, June 30, 1991, and June 30, 1992, no town shall be required to spend more on regular program expenditures than an amount equal to the product of the foundation for such year and the total need students of the town for the prior school year.

"(d) For the year ending June 30, 1993, and for each fiscal year thereafter, the regular program expenditures of a town shall be not less than the foundation for such year multiplied by the total need students of the town for the prior school year.

"(e) Upon a determination by the state board of education that a town or kindergarten to grade twelve, inclusive, regional school district failed in any fiscal year to meet its minimum expenditure requirement pursuant to subsection (a), (c), (d) or (f), as appropriate, of this section, the town or kindergarten to grade twelve, inclusive, regional school district shall forfeit an amount equal to two times the difference between said minimum expenditure requirement and the town's or kindergarten to grade twelve, inclusive, regional school district's actual regular program expenditures. The amount so forfeited shall be withheld by the state department of education from the grant payable to the town in the second fiscal year immediately following such failure by deducting such amount from the town's equalization aid grant payment pursuant to said section 10-262i, except that in the case of a kindergarten to grade twelve, inclusive, regional school district, the amount so forfeited shall be withheld by the state department of education from the grants payable pursuant to said section 10-262i to

The following facts are not in dispute. Every year, the state department of education, the administrative arm of the state board, distributes an "ED014 form" to the superintendent of schools for each local or regional school board. The data provided on these forms enable the department of education to ensure that the MER is met by each regional and local school board. In January or February of 1990, Dr. John Dow, Jr., Ph.D, superintendent of the New Haven schools, com-

the towns which are members of such regional school district. The amounts deducted from such grants to each member town shall be proportional to the number of resident students in regular programs in each member town. Notwithstanding the provisions of this subsection, the state board of education may waive such forfeiture upon agreement with the town or kindergarten to grade twelve, inclusive, regional school district that the town or kindergarten to grade twelve, inclusive, regional school district shall exceed its minimum expenditure requirement during the fiscal year in which the forfeiture would occur by an amount not less than the amount of said forfeiture.

"(f) Notwithstanding the provisions of subsections (a), (b) and (c) of this section: (1) For the fiscal years ending June 30, 1990, June 30, 1991, June 30, 1992, the regular program expenditures of a kindergarten to grade twelve, inclusive, regional school district shall not be less than the greater of (A) the product of (i) the target foundation multiplied by the sum of the number of total need students in the member towns in the regional school district for the prior school year and (ii) the ratio of the sum of the member towns' grant entitlements for such year pursuant to section 10-262h divided by the sum of the member towns' target grants or (B) an amount equal to the sum of (i) the regular program expenditures for the regional school district for the prior fiscal year and (ii) the amount of the sum of the aid increases paid to the member towns as calculated pursuant to subsection (b) of this section, provided no kindergarten to grade twelve, inclusive, regional school district shall be required to spend more on regular program expenditures than an amount equal to the product of the foundation for such year and the sum of the total need students in the member towns of the regional school district for the prior school year; and (2) for the year ending June 30, 1993, and for each fiscal year thereafter, the regular program expenditures of a kindergarten to grade twelve, inclusive, regional school district shall be not less than the foundation for such year multiplied by the sum of the total need students of all member towns for the prior school year.

"(g) For the purposes of this section 'total need students' means total need students as calculated using the data of record as of December first of such data year."

pleted and returned New Haven's form to the department of education. The form indicated that projected figures for the 1990-91 school year would satisfy the MER for that year.

Thereafter, the New Haven board submitted to the city its formal budget request of approximately 116 million dollars for the 1990-91 school year. The city, acting through its board of finance, appropriated approximately ninety-six million dollars. The New Haven board revised its budget so that the MER, projected at approximately eighty-four million dollars, was met but special education was inadequately funded. On June 15, 1990, Dow indicated by letter to the department of education that the 1990-91 budget as projected was insufficient to fund special education adequately, and he indicated specific cuts that were anticipated. Commissioner of education Gerald Tirozzi of the department of education responded by letter of June 20, 1990, stating: "The obligation to provide appropriate special education services to each eligible student is manifest in both state and federal law," and therefore "[t]he New Haven board should construct a budget reflecting reasonable expenditures for appropriate special education services, regardless of the impact upon the state mandated [MER]."

The New Haven board then submitted another budget, which although meeting special education mandates, projected a MER shortfall of $4,075,354. When the state board received a report concerning this proposed budget, Tirozzi recommended that the state board adopt a resolution initiating a § 10-4b complaint against the New Haven board for its projected failure to meet the MER.

On June 27, 1990, the state board, acting pursuant to its authority under § 10-4b, initiated a complaint, naming the New Haven board and the city as respon-

dents. An investigative team reviewed conflicting figures presented by the New Haven board and the city, and met with representatives from all three parties to attempt to reconcile the differences. The team recalculated the projected MER shortfall at $2,056,930.

On September 26 and October 1, 1990, the state board held a § 10-4b administrative hearing, presided over by a three member panel. After this evidentiary hearing, the panel issued a "proposal for a decision" which found a MER shortfall of $2,056,930. Subsequently, the full state board rendered its final decision, ratifying this finding, and ordered the city to provide assurances that an additional $2,056,930 would be provided to the New Haven board. The state board also ordered the New Haven board to submit a plan detailing the manner in which it would spend these additional moneys on MER-eligible activities.

"The standard of judicial review of administrative agency rulings is well established." *Tomlinson* v. *Board of Education,* 226 Conn. 704, 712, 629 A.2d 333 (1993); *Lieberman* v. *State Board of Labor Relations,* 216 Conn. 253, 261, 579 A.2d 505 (1990). Under General Statutes § 4-183 (j), "[t]he court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." The reviewing court " 'may not retry the case or substitute its judgment for that of the agency on the weight of the evidence or questions of fact. . . . Rather, an agency's factual

and discretionary determinations are to be accorded considerable weight by the courts. . . .' " *Tomlinson* v. *Board of Education,* supra, 713. We also afford deference to the state board's construction of the public education statutes at issue in this appeal because the state board is the agency charged with the enforcement of these statutes. *Crochiere* v. *Board of Education,* 227 Conn. 333, 354, 630 A.2d 1027 (1993). " 'On the other hand, it is the function of the courts to expound and apply governing principles of law.' " *Lieberman* v. *State Board of Labor Relations,* supra, 262.

The principal issue in this appeal, as we previously noted, is whether the city exhausted its obligation to fund the MER adequately when it appropriated a dollar amount sufficient to meet the MER but not sufficient to meet the MER and other mandated programs.[9] The city points out that its overall appropriation of ninety-six million dollars to the New Haven board was in excess of the MER. The city claims that, because it intended eighty-four million of the ninety-six million dollars appropriated to fund the MER, the New Haven board was required to budget that part of its appropriation in that specific manner, and that it was the board's responsibility to meet other federal and state mandates with the remaining twelve million dollars.

In its second, related, claim, the city argues that it should not have had the burden to demonstrate inaccuracies in the budget or budget items that constituted abuses of discretion, but, instead, that the New Haven board should have had the responsibility to "reallocate or reduce expenditures to meet the City's overall appropriation." These first two claims are analyzed together

[9] The city characterizes this issue as follows: "[W]hether the local board can divert monies intended for the MER in order to cover MER-ineligible programs, or whether it must reallocate MER-ineligible monies as required by the City Charter or utilize funding sources other than the City. . . ."

because each would place a higher standard of review on the actions of the New Haven board than the abuse of discretion standard applied by the state board.[10]

The city's argument cannot be reconciled with our prior interpretations of General Statutes §§ 10-220 and 10-222.[11] Under § 10-222, local and regional boards of education are to prepare an itemized estimate of the

[10] The state board reviewed the actions of the New Haven board under the following standard: "The standard of review we apply is one by which this Board will accept the budget as stated by the New Haven Board of Education for the purpose of determining whether the MER will be met unless we find that there are inaccuracies in that budget or that the budget is the product of an abuse of the discretion which has been afforded to local school officials. Upon a finding of inaccuracies or an abuse of discretion, the Board will determine whether the MER is satisfied after making or directing appropriate adjustments to correct the inaccuracies and/or eliminate the effect of any abuse of discretion."

[11] General Statutes § 10-222 (a) provides: "Each local board of education shall prepare an itemized estimate of the cost of maintenance of public schools for the ensuing year and shall submit such estimate to the board of finance in each town or city having a board of finance, to the board of selectmen in each town having no board of finance or otherwise to the authority making appropriations for the school district, not later than two months preceding the annual meeting at which appropriations are to be made. The money appropriated by any municipality for the maintenance of public schools shall be expended by and in the discretion of the board of education. Any such board may transfer any unexpended or uncontracted-for portion of any appropriation for school purposes to any other item of such itemized estimate. Expenditures by the board of education shall not exceed the appropriation made by the municipality, with such money as may be received from other sources for school purposes. If any occasion arises whereby additional funds are needed by such board, the chairman of such board shall notify the board of finance, board of selectmen or appropriating authority, as the case may be, and shall submit a request for additional funds in the same manner as is provided for departments, boards or agencies of the municipality and no additional funds shall be expended unless such supplemental appropriation shall be granted and no supplemental expenditures shall be made in excess of those granted through the appropriating authority. The annual report of the board of education shall, in accordance with section 10-224, include a summary showing (a) the total cost of the maintenance of schools; (b) the amount received from the state and other sources for the maintenance of schools, and (c) the net cost to the municipality of the maintenance of schools."

cost of maintenance of public schools for the ensuing year and submit the estimate to the board of finance, as the New Haven board did in the present case. Subsequently, "[t]he money appropriated by any municipality for the maintenance of public schools shall be expended *by and in the discretion of* the board of education" with the proviso that the board's expenditures "shall not exceed the appropriation made by the municipality." (Emphasis added.) General Statutes § 10-222 (a). Therefore, once an appropriation is made by a board of finance to a board of education, the manner in which it is expended is within the sound discretion of the school board. *Baston* v. *Ricci,* 174 Conn. 522, 528, 391 A.2d 161 (1978); *West Hartford Education Assn., Inc.* v. *DeCourcy,* 162 Conn. 566, 573, 295 A.2d 526 (1972); *Waterbury Teachers Assn.* v. *Furlong,* 162 Conn. 390, 398, 294 A.2d 546 (1972); *Board of Education* v. *Ellington,* 151 Conn. 1, 9, 193 A.2d 466 (1963). "A town board of education is an agency of the state in charge of education in the town, and broad powers are granted it by the legislature to that end. In the exercise of those powers or in the incurring of expense necessitated thereby to be paid by the town, the board of education is beyond control by the town or any of its officers except as limitations are found in statutory provisions." (Internal quotation marks omitted.) *Board of Education* v. *Ellington,* supra, 6.

The city, however, claims that the creation of the MER imposed a new limit on the "otherwise broad discretion [of school boards] to spend monies actually appropriated." To support its claim, the city directs our attention to two statutes. Section 10-222 provides that a school board may not spend beyond its appropriation. Section 10-4b (b) provides that the state board "may not order an increase in the regular program expenditures [MER-eligible expenditures] . . . of such local or regional board of education if such expenditures are

in an amount at least equal to the [MER] . . . provided that an increase in expenditures may be ordered in accordance with section 10-76d." In advancing its claim, the city characterizes the "provided" clause of § 10-4b (b) as requiring the state board to order increases in special education expenditures only in accordance with General Statutes § 10-76d.[12] The city asserts that these provisions have been "circumvented" in the present case.

We initially note that the New Haven board did not spend more than its appropriation at any time, and the state board neither ordered an increase in MER-eligible expenditures beyond that required nor ordered any increases in special education funding. Therefore, we will analyze the city's claim as an argument that the spirit of these provisions was undermined by the procedure used by the state board in this case.

We are not insensitive to the city's concerns. Indeed, these concerns were recognized by the state board when it stated in its written decision that it would not be party to a deliberate strategic underfunding of MER by a local board of education with the purpose of

[12] General Statutes (Rev. to 1989) § 10-4b (b), as amended by Public Acts 1989, No. 89-124, § 8, does not expressly state that the state board may order an increase in *special education* expenditures "only in accordance with" General Statutes § 10-76d, as the city asserts. The statute states that the state board "may not order an increase in the regular program expenditures [MER-eligible expenditures] . . . of such local or regional board of education if such expenditures are in an amount at least equal to the [MER] . . . *provided that an increase in expenditures may be ordered in accordance with section 10-76d.*" (Emphasis added.) Section 10-76d sets out the duties and powers of boards of education to provide special education programs and services. It is unclear whether the legislature intended to refer to MER-eligible, special education expenditures, or all expenditures when it used the word "expenditures" in the italicized clause. For the limited purpose of our resolution of this appeal, but without deciding that it does, we will accept the city's characterization and read § 10-4b as indicating that an increase in special education expenditures may be ordered only in accordance with § 10-76d.

extracting an order from the state board for additional funds.[13] The city, however, points to nothing in the language of the statutes, and cites no legislative history, to support its argument that the traditional spending discretion of school boards has been altered or abolished by the statutes enacted in response to *Horton I*. Furthermore, the city's argument depends on its view that MER expenditures are "sacrosanct" and that therefore the local board may not use moneys intended by the city for the MER to fund other programs. The argument fails to recognize that the legislature also mandated the special education funding, adequate transportation and other mandates that constitute the MER-ineligible portion of the school board's budget.[14]

---

[13] The state board stated in its written decision: "Another policy which must guide us in deciding what our role is in matters of this kind is the policy that the Board should not become a vehicle for perpetuating and giving legal force to inaccuracies in the budget, nor should the Board allow itself to become the arm of unscrupulous or manipulative local school officials who may have designed their school budget for the purpose of extracting additional money from the municipality without consideration of [the] fiscal condition of the municipality and without regard to what is legitimately necessary to provide an adequate program. The Board recognizes that the potential for abuse and error in the budget making process is such that this Board cannot close its eyes to claims by municipal officials that the local board of education will, in fact, meet its MER, despite claims to the contrary by local school officials."

The state board appropriately recognized that the discretion vested in local boards of education is not an absolute discretion. See *Society for Savings* v. *Stramaglia,* 225 Conn. 105, 113, 621 A.2d 1317 (1993) (" '[t]he term 'discretion' means a legal discretion to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice' "). Indeed, as earlier noted, the state board, after its initial investigation, rejected the New Haven board's calculation of a $4,075,354 MER shortfall and determined that the actual shortfall was more than two million dollars less. Therefore, we reject the city's claim that the state board's decision, taken to its logical conclusion, would allow the local board to allocate nothing to MER and claim an eighty-four million dollar shortfall.

[14] The city points to only one program in the New Haven board's budget, the allocation of $1,200,000 to the gifted and talented program, that is not mandated by state law and, at the time of the administrative hearing, was

To construe the statutes that followed in the wake of *Horton I* as having the effect of eliminating the traditional discretion of school boards to formulate their budget "would constitute a radical departure from established policy. We will not infer that the legislature intended to enact a significant change in existing law without an unequivocally expressed manifestation of legislative intent." *Kinney* v. *State*, 213 Conn. 54, 66, 566 A.2d 670 (1989); see *Baston* v. *Ricci*, supra, 528 ("The plaintiffs would have us read into [a statute] by construction a meaning not apparent in its language but which they contend was intended by the legislature. This we will not do. We are confined to the intention which is expressed in the words which the legislature has used.").

We conclude the following: that the obligation of the town to appropriate sufficient funds to a local board of education to meet the MER has not been met if the appropriation is sufficient to meet MER but insufficient

MER-ineligible. General Statutes § 10-76d (b), (c). The city argues that an abuse of discretion standard is too deferential with regard to an expenditure on a program that is not mandated by state law and does not count toward MER.

Although we decide this case under an exception to the mootness doctrine; see footnote 2; the issue of whether the New Haven board's budget allocation for a gifted and talented program was an abuse of discretion under the circumstances of this case is moot and *not* readily capable of repetition. At the time of the state board hearing in this case, gifted and talented expenditures were included in the "net cost of special education" as defined in General Statutes (Rev. to 1989) § 10-76f (h), which was eligible for reimbursement by the state under General Statutes § 10-76g (a) to the same extent as other special education expenditures, and therefore excluded from the calculation of MER under General Statutes (Rev. to 1989) § 10-262f (17) (B) (i). Section 10-76f (h) has been subsequently amended, however, by Public Acts 1992, No. 92-262, § 22, so that gifted and talented program expenditures are no longer reimbursed by the state, and therefore *do* count toward the MER for the 1992-93 school year and subsequent school years. Public Acts 1992, No. 92-262, § 42. Furthermore, the city points to no other program operated by the New Haven board, currently or in the past, that is not mandated by state law and does not count toward the MER. Accordingly, we decline to review this issue.

for other educational requirements; that the local board of education continues to have the discretion to allocate the appropriation made by the town between MER-eligible and MER-ineligible budgetary items; and that the state board correctly applied an abuse of discretion standard in its review of the New Haven board's allocation of the city's appropriation in order to determine whether there was a MER shortfall.

In view of our resolution of the principal issue, we hold that the state board correctly placed the burden of proof on the city to identify each MER-ineligible expenditure that constituted an abuse of discretion. When applying an abuse of discretion standard, a tribunal may appropriately place the burden of proof on the party seeking to challenge an exercise of discretion. See, e.g., *Conley* v. *Board of Education,* 143 Conn. 488, 497–98, 123 A.2d 747 (1956).[15]

Having resolved the principal issue raised by this appeal, together with its collateral burden of proof issue, we now address the remaining claims raised by the city, which allege various abuses of discretion by the state board. In its third claim, the city argues that the state board improperly relied on a budget supplied by the superintendent rather than requiring actual evidence of MER underfunding. The city also argues in its fourth claim that the state board should not have compelled the city to pay the projected MER shortfall before the school year began, but rather the state board

---

[15] We also conclude that the trial court properly applied the abuse of discretion standard to the state board's decision. At the administrative hearing, the city identified several program expenditures that it characterized as abuses of discretion. The state board analyzed each expenditure challenged by the city, and concluded that the city had not established an abuse of discretion under the circumstances. The city points to nothing in the record to challenge the conclusions of the state board; indeed, the city's principal witness, city comptroller Ralph W. Halsey III, conceded before the state board that the budget modifications advocated by the city were ones that the New Haven board "could," as opposed to "must," implement.

should have waited until such point during the school year when it could ascertain with certainty that the MER had not been met. Because these claims are essentially the same, amounting to a general claim that the state board can act on a violation of law only after it occurs, we will analyze them together.

The city does not cite any statute or case in support of its theory that the regulatory power of the state board does not include the authority to act to prevent imminent statutory violations. The language of § 10-4b, the statute that authorized the state board to hold the hearing in this case, does not support the city's theory. To the contrary, this statute requires the state board, upon complaint, to make a finding as to whether the local board of education "has failed *or is unable* to provide educational opportunities to meet the requirements of this section . . . ." (Emphasis added.) General Statutes (Rev. to 1989) § 10-4b (b) as amended by Public Acts 1989, No. 89-124, § 8. Under that same statute, the state board is authorized to order a local governmental body or its agent, such as the New Haven board of finance, "to take reasonable steps to comply with the requirements of said section 10-4a" if it finds that the local governmental body or its agent "is responsible for such failure *or inability*." (Emphasis added.)

A reasonable interpretation of the language of § 10-4b is that the state board may act to prevent a violation of law *before* it occurs, as in this case, upon a finding of an "inability" to satisfy educational mandates due to insufficient funding, and it may also act upon a violation of law after it occurs, upon a "failure" to meet the statutory mandates. If the legislature intended to limit the authority of the state board so that it could address violations of law only subsequent to their occurrence, it need only have authorized the state board to act in response to a "failure" by a school board to fund the MER. The city would have us interpret the

word "inability," however, so that it would have no meaning independent of the word "failure." "[N]o word in a statute should be treated as superfluous or insignificant . . . and . . . we strive to attach independent meaning to every phrase contained in a legislative enactment." *O'Brien Properties, Inc.* v. *Rodriguez,* 215 Conn. 367, 372–73, 576 A.2d 469 (1990). We conclude that the state board is authorized by § 10-4b to act to prevent an imminent violation of educational mandates before its occurrence.

The city next argues that the trial court improperly upheld the state board's acceptance of the New Haven board's budget despite a claim that the New Haven board has a history of estimating expenditures inaccurately. The state board rejected this claim, stating in its decision that "[t]he evidence presented to us failed to demonstrate any discrepancy between the [New Haven board's] actual intentions and the intentions reflected in the budget figures relied upon by the Commissioner. Furthermore, the evidence was not sufficient to establish that the [New Haven board's] history of estimating its budget expenditures is such that the Board should not grant the figures which the Commissioner relied on any presumptive or probative value." The trial court found "no evidence in the record" to support the city's factual allegation, and the city points to nothing in the record on appeal to this court to support its claim. We conclude that the trial court properly held that the state board had not abused its discretion in this regard.

Finally, the city argues that the trial court relied on the superintendent's representations with regard to the projected budget, without a clear affirmative ratification of the budget by the New Haven board. The state board rejected this claim, stating in its decision that "the evidence shows that the [New Haven board] has never insisted that the Superintendent submit the

 EDO14 to the Board for its review and approval prior to submission to the Commissioner. Under these circumstances we cannot conclude that the superintendent lacked the authority to develop and submit the information required on the EDO14 without first getting the approval of the [New Haven board]. . . . [E]ven if the Superintendent did lack the necessary authority we would be forced to conclude from the participation of the [New Haven board] in the proceedings before us that [it] has ratified the Superintendent's representations and made them its own." In addition, Robert Brewer, of the department of education bureau of grants, testified at the state board hearing that it is a normal course of procedure for a superintendent to complete an EDO14 form without express ratification by a board chairperson. On appeal, the city points to nothing in the record to support its claim that the state board abused its discretion by relying on the form submitted by the superintendent. We determine that the state board did not abuse its discretion in this regard.

We conclude that the state board of education did not abuse its discretion by ordering the city to provide an additional appropriation to the New Haven board in the amount of $2,056,930 so that the MER for the 1990-91 school year would be met.

The judgment is affirmed.

In this opinion the other justices concurred.