[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action was commenced by the plaintiff Town of Willington by writ, summons and complaint made returnable to this court on April 4, 1995. The one-count complaint alleges that the defendants Regional Board of Education for Regional School District No. 19 ("RSD NO. 19" or "District"), Town of Ashford ("Ashford") and Town of Mansfield ("Mansfield") violated General Statutes § 10-51 (c) by failing to apply the surplus of general funds from the 1993-94 fiscal year to the 1994-95 fiscal year. All defendants appeared and filed answers and special defenses on May 30, 1995. On June 21, 1995 the plaintiff replied to the special defenses by way of denial. On July 31, 1995, the plaintiff filed a motion for summary judgment on its complaint and a memorandum in support thereof. The plaintiff, with leave of court, filed a supplemental memorandum on October 18, 1995. On January 10, 1996, the defendants filed a consolidated opposition to the plaintiff's motion for summary judgment and cross motion for summary judgment on the plaintiff's complaint, along with a memorandum of law. On March 6, 1996, the defendants filed an amended answer and a counterclaim seeking a credit for a surplus from a designated fund balance from the 1993-94 fiscal year that RSD No. 19 had given to the plaintiff for the 1994-95 fiscal year. On April 4, 1996, the plaintiff filed a reply, denying the defendants' special defenses, answered the counterclaim and raised a special defense to the counterclaim. On CT Page 10273 April 26, 1996, the defendants replied to the plaintiff's special defense to the counterclaim. On September 24, 1996, the plaintiff filed a motion to consolidate this case with the matter of Town ofWillington v. Regional Board of Education for Regional SchoolDistrict, Docket No. 055991. The motion was granted by the court, Hammer, J., on November 25, 1996. A hearing was held on May 27, 1997. The defendants filed a supplemental brief on June 3, 1997.
UNDISPUTED FACTS
The undisputed facts as provided by the pleadings and affidavits are as follows. The plaintiff does not maintain within its borders any public school for grades nine through twelve. (Complaint, ¶ 2.) In order to provide the required education to its town residents, the plaintiff, prior to the 1994 school year, contracted with RSD No. 19 to provide such education. (Defendants' Exhibit B-1, Plan of Representation and Method of Transition ["Defendants' Exhibit B-1"], ¶ 1.) Prior to the admission of the plaintiff as a member of RSD No. 19, the district consisted of Ashford and Mansfield. (Defendants' Exhibit A, Plaintiff's Responses and Objections to Defendants' First Set of Requests to Admit in the consolidated case, Willington v. Regional Board ofEducation, 055991 ["Defendants' Exhibit A"], No. 1.) As a result of a referenda held in Ashford, Mansfield and Willington, respectively, on November 2, 1993, the district was expanded to include the plaintiff. (Defendants' Exhibit A, No. 2.) The referenda and expansion of the district were authorized by a Special Act of the legislature. Special Acts 1993, 93-9.
Immediately after the November 2, 1993 referenda, the plaintiff joined RSD No. 19. (Affidavit of John Patton, attached to Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment ["Patton Affidavit"], ¶ 5.) This took place four months into the 1993-94 fiscal year and RSD No. 19 was operating in accordance with the 1993-94 fiscal budget, which was established prior to the plaintiff's entry. (Defendants' Exhibit B, Affidavit of Bruce Silva ["Defendants' Exhibit B"], ¶ 5.) In order to facilitate the transition from the two member regional board of education to a three member board, a Plan of Representation and Method of Transition ("transition plan") had been developed. (Defendants' Exhibit B-1, ¶ 1.) This transition plan provided for, inter alia, the contract between the plaintiff and the pre-November 2, 1993 board ("current board") to remain in effect, thus requiring RSD No. 19 to educate the plaintiff's students in grade nine through twelve until June 30, 1994 and for the plaintiff to pay for CT Page 10274 those services. (Defendants' Exhibit B-1, ¶¶ 1, 2.) As a result, the plaintiff did not gain any responsibility for the 1993-94 budget that was already in place. (Patton Affidavit, ¶ 6.)
A transitional regional board of education ("transitional board") with representatives from each of the three towns was established. (Patton Affidavit, ¶ 6.) The transitional board was charged with the responsibility of preparing the 1994-95 and 1995-96 school budgets. (Patton Affidavit, ¶ 6.) These budgets were to be completed in accordance with General Statutes § 10-51. (Defendants' Exhibit B-1, ¶ 3-C.) The expenses of the transitional board were paid for from funds received from the current board. (Defendants' Exhibit B-1, ¶ 3-C.) On June 30, 1994, the tuition contract between the plaintiff and the current board terminated in accordance with the transition plan. (Defendants' Exhibit B-1, ¶ 1.) On July 1, 1994, the current board dissolved and the transitional board assumed control of RSD No. 19. (Defendants' Exhibit B-1, ¶ 1.)
By the end of the 1993-94 fiscal year, it was determined that there existed a surplus of general funds in the amount of $82,594. (Defendants' Exhibit B, ¶ 7.) No provision of the transition plan specifically dealt with the issue of what was to happen to the surplus of general funds from the 1993-94 fiscal year. On January 10, 1995, the board voted to pay or credit Ashford and Mansfield with this surplus. (Complaint, ¶¶ 6, 7.) Because of the disagreement with the plaintiff over the credit to Ashford and Mansfield only, the board credited Ashford and Mansfield with $15,296.41 and $44,039.12, respectively, the amount they would receive if the plaintiff was also entitled to share in the surplus. (Defendants' Exhibit B, ¶ 8.) The balance of $23,258.47 was tendered to the court pending determination of whether the plaintiff is entitled to share in the surplus. (Defendants' Exhibit B, ¶ 9.)
DISCUSSION
A. Claims of the Parties
The plaintiff's complaint alleges that the actions taken by RSD No. 19 on January 10, 1995 of paying or crediting the surplus of general funds from the 1993-94 fiscal budget to Ashford and Mansfield violates the mandates of General Statutes § 10-51 (c), which requires that a board of education use any budget appropriation which has not been expended by the end of the fiscal CT Page 10275 year to reduce the net expenses of the regional school district for the following fiscal year. In its motion for summary judgment, the plaintiff claims that there is no issue of material fact and as a matter of law General Statutes § 10-51 (c) requires RSD No. 19 to allow the plaintiff to share in the surplus along with Ashford and Mansfield.
The defendants' cross motion for summary judgment on the plaintiff's complaint is based on five grounds: (1) General Statutes § 10-51 (c) does not provide the plaintiff with a private cause of action, (2) the defendant regional school board is protected by the doctrine of sovereign immunity, (3) the plaintiff did not allege and can not prove that Ashford and Mansfield violated General Statutes § 10-51 (c), (4) General Statutes §10-51 (c) does not apply to the exceptional circumstances of this case and (5) even if the court finds that General Statutes § 10-51 (c) applies, the application of the statute would not produce a result favorable to the plaintiff.
B. Legal Standard for Summary Judgment
"[P]ractice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Doty v. Mucci,238 Conn. 800, 805, 679 A.2d 945 (1996). "[A] party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue. Bank of Boston v. ScottReal Estate Inc., 40 Conn. App. 616, 619-20, 673 A.2d 558, cert. denied, 237 Conn. 912, 675 A.2d 884 (1996). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted; internal quotation marks omitted.) Id., 620. Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. UnitedTechnologies Corp., 233 Conn. 732, 751, 660 A.2d 810 (1995).
C. Private Cause of Action for the Plaintiff for a Violation of General Statutes § 10-51 (c)
The defendants move for summary judgment on the ground that General Statutes § 10-51 (c) does not provide an express cause of CT Page 10276 action for the plaintiff and one can not be implied. The defendants claim that General Statutes § 10-4b provides the exclusive remedy for complaints concerning any alleged non-compliance with statutory mandates by regional school districts. The plaintiff argues that General Statutes § 10-4b does not apply to the subject matter of this dispute, therefore, the plaintiff is without an administrative remedy and is entitled to proceed in superior court. The court agrees with the plaintiff that General Statutes § 10-4 (b) does not provide the plaintiff with a remedy. That statute allows the state board of education to take action against a local board of education that fails to implement the educational interests of the state. New Haven v. State Board ofEducation, 228 Conn. 699, 704-05, 638 A.2d 589 (1994).
General Statutes § 10-51 (c) provides in relevant part, "[t]he board shall use any budget appropriation which has not been expended by the end of the fiscal year to reduce the net expenses of the district for the following fiscal year." This provision is just one in a statutory scheme that provides the framework for the establishment, operation and dissolution of regional schools in this state. General Statutes § 10-39 et seq. Statutory construction is a question of law for the court. David v. Norwich,232 Conn. 311, 317, 654 A.2d 1221 (1995). The court finds that neither this phrase nor any other in the statutory scheme expressly provides the plaintiff with a cause of action.
The court must then determine if General Statutes § 10-51 (c) implies a cause of action for the plaintiff. "In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose benefit the statute was enacted? Second; is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?" (Citations omitted; internal quotation marks omitted.) Napoletanov. Cigna Healthcare of Connecticut, Inc., 238 Conn. 216, 249-50,680 A.2d 127 (1996), cert. denied, ___ U.S. ___, 117 S.Ct. 1106,137 L.Ed.2d 308 (1997).
 1. Is the plaintiff one of the class for whose benefit the statute was enacted?
In reading the language of subsection (c) together with the other subsections, the court finds that the plaintiff is not of the CT Page 10277 class this statute was intended to benefit. General Statutes §10-51 (a) provides in general terms that the fiscal year shall be July first to June thirtieth, that the board shall prepare a budget, the budget shall be passed by each member town, and thereafter the board shall estimate the share of the net expenses to be paid by each member town. General Statutes § 10-51 (b) explains what share of the net expenses of the district each member town will bear. General Statutes § 10-51 (c) states that the board shall invest any funds not needed immediately for the regional school district. Of course, this subsection also states that the board shall use any budget appropriation which has not been expended to reduce the net expenses of the district for the following fiscal year. In addition, this subsection allows the board to borrow funds and issue notes in anticipation of payments by a member town or the state. General Statutes § 10-51 (d) permits a board to create a reserve fund to finance specific capital improvements.
The statute does not contain any provision that pertains to the expansion of an existing regional school district. The plaintiff joined the existing regional school district by way of a Special Act, "[n]otwithstanding the provisions of sections 10-43,10-45, 10-46 and 10-46a of the general statutes."[1] Special Acts 1993, No. 93-9. Although the day following the referenda the plaintiff became a member town of RSD No. 19, the plaintiff did not join the current board of education. Two boards came into existence after the referenda, a current board of education and a transitional board of education. Under the provisions of the transition plan, the current board continued to manage the district for the remainder of the 1993-94 fiscal year. The transitional board, consisting of members appointed by the plaintiff as well as members of the current regional board, began preparing the 1994-95 and 1995-96 budgets pursuant to General Statutes § 10-51. The transition plan did not provide for the plaintiff to contribute to the 1993-94 budget and the plaintiff did not contribute. For the remainder of the 1993-94 fiscal year, the existing tuition contract between the plaintiff and the current board of education remained in effect. In the process of statutory interpretation, the court seeks "to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply." UnitedIlluminating Co. v. New Haven, 240 Conn. 422, 431, 692 A.2d 742
(1997). It is clear from the language of the statute that General Statutes § 10-51 was enacted to provide an equitable framework of representation and cost assessment for member towns who are CT Page 10278 contributing to the expenses of the regional school district. General Statutes § 10-51 (c) is designed to benefit those member towns who have created and voted on a budget and paid their share of the net expenses for the operation of the regional school district pursuant to General Statutes § 10-51 (a) and (b). General Statutes § 10-51 (c) can not be reasonably applied to this case.
The plaintiff, having not contributed to the net expenses as provided by General Statutes § 10-51 (a) and (b), is not of the class for whose benefit General Statutes § 10-51 (c) was enacted.
 2. Is there any indication of legislative intent, explicit or implicit, either to create or deny such a remedy?
There is no indication in the legislative history of the statutes pertaining to regional school districts which suggests a legislative intention to vest in the plaintiff, a member of a regional school district who did not contribute to the expenses of the district for the 1993-94 fiscal year, a share of the general funds remaining from the 1993-94 fiscal year. When the legislators revised the statutory scheme in 1969, they only spoke of establishing clear guidelines for the organization of the regional school districts. See 13 H.R. Proc., Pt. 1, 1969 Sess., pp. 4941-44, remarks of Representative Thomas P. Mondani.
In reviewing the legislative history of the special legislation that was passed to allow the plaintiff to join RSD No. 19, the court can not find any indication that the legislature gave consideration to the applicability of General Statutes § 10-51 (c) in particular. While there was consternation about enacting legislation that permitted the expansion of a regional school district by procedures agreed to by the participants rather than by statutory provisions, the focus was not on the plaintiff's right to a share of a fund surplus. See Conn. Joint Standing Committee Hearings, Education, Pt. 1, 1993 Sess., pp. 57-58.
A review of the legislative histories, therefore, does not provide any indication whether the legislature intended either to create or deny such a remedy for the plaintiff.
 3. Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?
In construing the purpose of the entire legislative scheme CT Page 10279 concerning regional school districts, all the subsections of General Statutes § 10-51 and, in particular, subsection (c), the court finds it is not consistent with the purpose of the legislation to provide the plaintiff with the remedy it seeks. The purpose of creating regional school districts is to "permit towns unable to give their children the benefit of a modern school plant the power to do this." Regional High School District No. 3 v.Newtown, 134 Conn. 613, 619, 59 A.2d 527 (1948). The purpose of the legislative scheme governing the regional school districts is to provide a framework within which two or more towns may establish, operate and dissolve a regional school district in an equitable manner. General Statutes § 10-39 et seq. The purpose of General Statutes § 10-51 is to provide guidelines for creating a budget and to establish the formula for determining an equitable share of the costs each member town must contribute to the regional school district. General Statutes § 10-51 (a), (b). The purpose of the one sentence of General Statutes § 10-51 (c) that is in issue in the present matter is to allow the board to use the funds contributed by the member towns for the benefit of those same member towns, albeit in the next fiscal year. Such a purpose does not confer on the plaintiff the remedy it seeks, a share of the surplus of general funds remaining from the 1993-94 fiscal year of RSD No. 19, funds to which it did not contribute. To provide the plaintiff with a credit from the funds contributed to the budget from Ashford and Mansfield would contravene the statutory purpose of providing an equitable appropriation of the expenses by the contributing member towns. General Statutes § 10-51 (c) operates on the presumption that the funds to be credited for the next year have been assessed and paid according to the provisions of subsections (a) and (b). The plaintiff seeks to isolate one sentence out of the entire legislative scheme and apply it to the unique circumstances of this case. "[I]n order to determine the meaning of a statute, we must consider the statute as a whole when reconciling its separate parts in order to render a reasonable overall interpretation." (Citation omitted; internal quotation marks omitted.) Doe v. Statewide Grievance Committee,240 Conn. 671, 682, ___ A.2d ___ (1997).
It is inconsistent with the underlying purposes of General Statutes § 10-51 (c) to provide the plaintiff with a right to the surplus of general funds of RSD No. 19 from the 1993-94 fiscal year.
Thus, the court finds that as a matter of law General Statutes § 10-51 (c) does not provide the plaintiff with a cause of action. CT Page 10280
CONCLUSION
Accordingly, for all of the reasons set forth above, the plaintiff's motion for summary judgment is denied and the defendants' cross motion for summary judgment is granted.[2]
BY THE COURT, Hon. Peter T. Zarella